## HALE and wife *against* HILLS.

In a case where the defendant claimed title under a deed, the delivery of which was disputed, after the defendant had adduced evidence to prove a delivery, the plaintiff offered evidence to prove, that during the last sickness of the grantor, and a few days before the delivery claimed by the defendant, the defendant broke open the trunk of the grantor and took from it the deed, together with sundry other papers ; and that upon the defendant's presenting these papers to the grantor, he ordered the defendant "to put them back into the trunk, and not to meddle with them again ;" it was held, that such evidence was inadmissible, as it neither conduced to prove that the deed was not subsequently delivered, nor to disprove the facts advanced by the defendant to evince its delivery.

Where the defendant offered evidence to prove, that after the making of a deed, under which he claimed title, the grantor had, several times, declared, that it was his intention to deliver the deed, and that the defendant should have the land therein conveyed, accompanied by evidence that soon after the making of the deed, the defendant entered into possession of the land, with the assent of the grantor, and had remained in possession until his death ; it was held, that such evidence was inadmissible, as it furnished no reasonable or probable presumption that the contemplated delivery took place.

The test of mental sanity, is, not whether the person has sufficient understanding to know what he is doing, but whether he has the right use of his reason.

THIS was an action of ejectment for a tract of land in *Glastenbury*, claimed by the plaintiffs, in the right of *Eunice Hale*, the wife.

The cause was tried, on the general issue, at *Hartford, February* term, 1830, before *Bissell*, J.

*Israel Hills*, in his life-time, was the undisputed owner of the demanded premises. He died intestate, on the 17th of *September*, 1827. *Eunice Hale*, one of the plaintiffs, is one of his children and heirs at law. The defendant is his grandson ; and claims title by virtue of a deed from him, dated the 27th of *June*, 1826. It was admitted, that at the time of making this

deed, the grantor was of sound mind, and so continued until his last sickness, and until within a few days of the delivery of the deed claimed by the defendant. The plaintiffs denied, that there had ever been any actual delivery of the deed to the defendant. They further insisted, that if it had, in point of fact, been delivered, yet the grantor, at the time of such delivery in fact, was not of sound mind, nor capable of making a legal delivery. The defendant claimed the reverse of these propositions; and the questions thus arising were the only questions involved in the trial.

It was admitted, that the deed was delivered, if it was ever delivered, on the 27th of *August*, 1827.

The defendant offered evidence to prove, and insisted that he had proved, the facts claimed by him in relation to the delivery. To prove that the deed had not been previously delivered to the defendant, and also to prove, that he had tortiously obtained possession of it, for the purpose of procuring a delivery of it, the plaintiffs offered evidence to prove, that during the last sickness of the grantor, and a few days before the pretended delivery, the defendant broke open the trunk of the grantor, and took from it the deed, together with sundry other papers; and that, upon the defendant's presenting these papers to the grantor, he ordered the defendant " to put them back into the trunk, and not to meddle with them again." To the admission of this evidence the defendant objected; but the judge admitted it.

The defendant then offered sundry witnesses to prove, that after the making of the deed, and while the grantor was of sound mind, he had, several times, declared, that it was his intention to deliver the deed, and that the defendant should have the land therein conveyed; accompanied by evidence, that soon after the making of the deed, the defendant had entered into possession of the premises, with the assent of the grantor, and had remained in possession until his death. This evidence was offered, by the defendant, for the two-fold purpose of shewing the previous determination of the grantor that the defendant should have the land, and of repelling the evidence offered by the plaintiffs. To the admission of all the evidence so offered by the defendant, the plaintiffs objected; and it was excluded, by the court.

Much evidence was offered, by both parties, to shew the condition of *Israel Hills* and the state of his mind, on, and for a few days previous to, the 27th of *August*, 1827.

The judge instructed the jury, that if they should find, that the deed was in fact delivered, and that the grantor, at the time of such delivery, had sufficient understanding to know what he was doing, although his mind might be greatly weakened and impaired, they ought to return a verdict for the defendant. But if they should find, either that the deed was not in fact delivered, or if delivered, the grantor was so far under the influence of delirium, or the powers of his mind were so prostrated, that he did not know what he was doing, they ought to return a verdict for the plaintiffs.

The jury gave a verdict for the plaintiffs; and the defendant moved for a new trial.

*Hungerford* and *W. W. Ellsworth*, in support of the motion, contended, 1. That the evidence offered by the plaintiffs, to prove that the defendant broke open his grandfather's trunk and took out his papers, and that the old gentleman reprimanded him for doing so, sometime previous to the delivery of the deed, was improperly admitted; as it had no bearing upon either of the controverted points in the case.

2. That the evidence offered by the defendant of the grantor's declared intention to deliver the deed, and that the defendant should have the land, accompanied by proof of the fact that the defendant went into possession with the assent of the grantor, should have been received.

3. That the charge of the jury was incorrect, inasmuch as the test of mental sanity which it prescribes, is not the true one. A mad-man may know perfectly well, and a sane man may not know, *what he is doing*. The jury could not safely follow such a guide. It could only mislead them.

*N. Smith* and *F. Parsons*, contra, contended, 1. That the evidence offered by the plaintiffs was proper to account for the defendant's possession of the deed without delivery, and to shew, that when the transaction to which such evidence related, took place, there *had been* no delivery, and that there was none *then*.

2. That the evidence offered by the defendant was properly excluded; as it did not conduce to shew, that the deed was delivered. The declaration of an intention to deliver, does not go to prove a delivery; still less does a man's going into pos-

*Hartford, June, 1830.*

Hale
*v.*
Hills.

session of land, with the assent of the owner, prove, or go to prove, that it was conveyed to him by deed delivered.

3. That the defendant has no reason to complain of the charge. If the grantor, at the time of the delivery, had not sufficient understanding to know what he was doing, surely he was not *compos mentis.*

HOSMER, Ch. J. The only controversy, in this case, regarded the defendant's title, claimed by him under a deed said to be executed by *Israel Hills,* deceased. It was insisted, by the plaintiffs, that this deed was never delivered; and if it was, that at its delivery, the grantor was of unsound mind.

1. The sole object of evidence is to ascertain the truth of the disputed facts or points in issue; and none ought to be admitted to any other point. 1 *Phill. Evid.* 126. Here, the question in issue was, whether there had been a delivery of the deed. Now, the evidence offered by the plaintiffs had no bearing on this point. It neither conduced to prove, that the deed, at a subsequent time, was not delivered, nor to disprove the facts advanced, by the defendant, to evince its delivery. The sole possible effect of such evidence was to withdraw the attention of the jury from the only relevant enquiry, and to diminish the proper force of the defendant's evidence, by infusing into their minds a prejudice against him. It follows, very clearly, that the evidence ought not to have been received.

2. The evidence offered by the defendant, to prove declartions by *Israel Hills,* of his *intention* to deliver the deed, prior to the delivery claimed, and to prove the subsequent *possession* of the land, by the defendant, with the assent of *Israel Hills,* was properly excluded, by the court. No case has been cited to prove the admissibility of such evidence; nor am I aware, that any exists.

An intention to do an act affords no proof that the intended act was done; and the possession of the land, with the assent of another, at most, is presumptive evidence of an existing intention to make and deliver a deed at a subsequent time. The only mode in which an intention to deliver a deed has been admitted in evidence, is, when it accompanies the actual delivery, and thus becomes part of the *res gesta. Com. Dig. tit* Evidence. A. *Co. Litt.* 36. *a.* n. 223. *Perk.* 143, 4. *Bushel* v. *Pasmore,* 6 *Mod.* 217. *Wheelwright* & al. v. *Wheelwright,* 2 *Mass. Rep.* 452. 13 *Vin. Abr.* 23 K. *pl.* 12. *a. Taw* v.

*Bury,* 2 *Dyer* 167. *b.    Alford and Lea's* case, 2 *Leon.* 110. *Hartford,*
*Souverbye* & ux. v. *Arden* & al.    1 *Johns. Chan. Rep.* 240.    June, 1830.
*Goodright* d. *Carter* v *Straphan* & al. *Cowp.* 201.    This all-es-    Hale
sential point of delivery, so easy to be proved as it is, if there has        *v.*
been no gross neglect, and so necessary to be guarded for the    Hills.
general security, cannot be established or affected, by a declared
intention to deliver a deed *in futuro.*    Such evidence furnishes
no reasonable or probable presumption that the contemplated
delivery took place.

3. It was claimed by the plaintiffs, that if the deed was ever
delivered, the grantor was, at its delivery, of unsound mind.
On this point much evidence was exhibited at the trial.    The
charge of the judge embraced this principle, that the act and
deed of one, who has a sufficiency of intellect to know what he
is doing, whether he is the subject of debility of mind or of in-
sanity, is valid.

Had the controversy regarded the weak state of the grant-
or's mind, without a pretence of his being otherwise unsound,
I should consider the charge as exceptionable.    I admit it to
be established, both at law and in chancery, that if a man be
legally *compos mentis,* be he wise or unwise, he is the disposer
of his property, and his will stands as a reason for his actions.
1 *Pow.* on *Contr.* 30.    *Osmond* v. *Fitzroy* & al. 3 *P. Wms.*
129.    But it would demand great consideration before it
should be affirmed, that the mere knowledge of the act a per-
son is doing, which, for aught I can discern, may be asserted of
an idiot, would constitute him *compos mentis.*    I think he must
know something of the nature and consequence of the act.

Be this, however, as it may, it appears from the motion and
the charge of the judge, that not long before the delivery of the
deed was claimed, *Israel Hills* was of sound mind; and whe-
ther he was *compos mentis,* or incompetent by reason of deliri-
um, was the real question between the parties.    To this state
of the controversy the charge of the judge was not adapted.

It is a fact universally known, that a person may be *non com-
pos mentis,* and yet possess great vigour of intellect, unusual
power of reasoning, peculiar subtility and shrewdness, and a
strong recollection of all the relations he stands in to others, as
well as of all the acts and circumstances of his life.    His mind,
however, is unsound, by reason of the delusive sources of
thought; all his deductions within the scope of his malady be-
ing founded on the assumption of matters as realities without

*Hartford,* any foundation, or so distorted and disfigured by fancy, as in
June, 1830. effect to amount to the same thing. *Rex* v. *Hadfield, Erskine's*

Hale
*v.*
Hills.

*Speeches.* I admit, that both Lord *Coke* and Sir *Mathew Hale* define a person *non compos mentis* to be one who wholly loses his memory and understanding; but this alone, if the expression is understood literally, is the condition of a person reduced to idiocy. These learned judges meant nothing more than, by a common figure of speech, putting the cause for the effect, to declare, that he is a person of unsound mind, who entirely loses the natural exercise of his faculties. So are they understood, by Sir *William Blackstone,* who defines a lunatic or person *non compos mentis,* to be " one who hath had understanding, but by disease, grief or other accident, has lost *the use of his reason.*" 1 *Bla. Comm.* 304. *Beverley's* case, 4 *Co.* 124.

*Israel Hills* might know, that he was delivering a deed, and yet the *right use of his reason* be so impaired as to leave him no rational understanding concerning the nature of the transaction. It is justly said, by the late Ch. J. *Swift*: " It must appear, that the person had not understanding sufficient to comprehend the nature, extent and consequence of the contract he was making, in order to render it void." 1 *Swift's Dig.* 173. And, on the other hand, although he knows the act he is doing, if this is the extreme limit of his understanding, he is *non compos mentis.* The charge to the jury, in my opinion, was incorrect.

I would advise a new trial.

PETERS and BISSELL, Js. were of the same opinion.

DAGGETT, J. I feel constrained to dissent from the opinion of the Court expressed on one point in this case.

Did I view the case in the light in which it is viewed by my brethren, my opinion would accord with theirs. They deem the testimony offered by the plaintiffs of the manner in which the defendant procured the deed of the 27th of *June,* 1826, as wholly irrelevant, because they suppose that there was no pretence of a delivery of the deed until months afterwards; and therefore, that the testimony tending to show, that the defendant obtained the deed tortiously, by breaking open the trunk of the grantor, could have no other effect than to prejudice the minds of the jury; and that this effect would be improper. Doubtless, had those facts so appeared, the result would have been correct; but, in my judgment, a different case is presented by the motion.

It seems, the defendant relied upon his deed of the 27th of *Hartford,* June, 1830. That deed was introduced by him; and by that deed, if it had been valid, the defendant would have gained a title, which would have prevailed against the plaintiffs, the heir at law of the grantor. The questions were two, *viz:* 1st, was the deed in question ever delivered? And if so, 2ndly, was the grantor of sufficient capacity to make and deliver the deed?

Hale
*v.*
Hills.

It does not appear, that when the plaintiffs offered the proof of the tortious taking of the deed, by the defendant, and of the grantor's declaration to him, "to put the deed back again, and not to meddle with it," that it was admitted by the parties, that the deed was not delivered until several weeks afterwards. The state of things then presented, was a deed of the land in question in the hands of the defendant, which would defeat the title of the plaintiffs. There was no question, it seems, respecting the authentication of the instrument; but the only point here was as to its delivery. The testimony of the *manner* in which the deed was obtained, was not only proper, but, if believed, was conclusive, to prove, that nothing could be claimed by the defendant under such a possession of the deed. It proved, that it *had not been* previously delivered; for it was taken from the trunk of the grantor *tortiously.* It proved also, that it was *not then delivered;* for the grantor told the grantee "to return it, and not to meddle with it any more." If the fact, *afterwards,* in the course of the trial, appeared, which seems now the basis of the opinion of the Court, *viz.* that it was agreed by the parties, that the deed was not delivered until weeks had elapsed, it might, very properly, have been the subject of the animadversion of the judge on the testimony; but I cannot perceive how it could shew it inadmissible in a previous stage of the trial. I would, therefore, disallow the motion.

WILLIAMS, J. gave no opinion, having been of counsel in the cause.

New trial to be granted.