GEORGIE B. WENTZ'S APPEAL FROM PROBATE.

Third Judicial District, Bridgeport, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

General Statutes, § 237, provides that when any person having property shall be found incapable of managing his affairs, the Court of Probate "shall" appoint a conservator. *Held* that this did not exclude the exercise of a reasonable discretion on the part of the Court of Probate, or of the Superior Court on appeal.

In the present case it appeared that, pursuant to a family arrangement, the incapable person had some years before parted with valuable rights in real estate derived from his parents, without consideration and without understanding the effect of his conveyances, and that the proceeds thereof were now owned by an elderly sister, under whose care he lived and by whom his wants were adequately and affectionately supplied. It did not appear, however, that she was under any legal obligation to furnish such support, nor that it would be provided by any one after her death. *Held* that under these circumstances the Superior Court acted properly in appointing a conservator.

A right of action is "property" within the meaning of § 237, and a right of action to reclaim the title to land in this State is property in this State.

In determining whether a conservator shall be appointed, the trial court may take into account the existence of rights of action to reclaim

lands in another State, and to prosecute demands against non-residents.

The change of legal *status* involved in the appointment of a conservator can be properly worked out only under and through the law of the territorial jurisdiction to which the incapable person belongs.

The pendency, in one State, of a suit for the protection of the rights of an incapable person in respect to real property in that State, does not affect the maintenance of a suit, in another State in which is his domicil, for his protection in respect to all the rights which he may possess.

While the primary object of the statute (§ 237) is to make necessary provision for an incapable person during his life or disability, the statute is also adapted, and presumably designed, to safeguard not only such means of support as the incapable person may possess, but whatever property he owns not needed for such purpose.

Any relative of the incapable person may apply for the appointment of a conservator, although he is not one of those who could be made liable for the support of the incapable person were the latter destitute of means.

It is not error for the trial court to accept as credible the testimony of the person found to be incapable of managing his affairs. The weight of his testimony is wholly a matter for the trier.

Argued November 10th, 1903—decided January 6th, 1904.

APPEAL from the refusal of the Court of Probate for the district of Fairfield to appoint a conservator over a person alleged to be incapable of managing his affairs, taken to the Superior Court in Fairfield County and tried to the court, *Gager, J.;* facts found and judgment rendered granting the application and reversing the action of the Court of Probate, and appeal by the respondent. *No error.*

*Curtis Thompson,* and *Alfred S. Brown* of New York, for the appellant (respondent).

*Stiles Judson, Jr.,* for the appellee (applicant).

BALDWIN, J. On March 1st, 1877, the appellee (who, suing by his next friend, is the appellant in this court) was a cotenant in remainder of valuable real estate in New York City. The other cotenants were four of his brothers and two sisters. His father was tenant for life, and each of the re-

maindermen was personally charged with $2,500 to be paid, out of the first rents and profits to which he might be entitled on coming into possession, to trustees for another brother, who was insane. The appellee and another of the cotenants were weak in intellect. To carry out a family arrangement which they were incapable of understanding, they were asked to join and did join, on March 1st, 1877, in a conveyance to three of their brothers and the sisters, as joint tenants, of the New York lands, subject to a charge for the payment of the trust fund for the insane brother, to be raised out of the rents and profits. By subsequent conveyances the title became vested in joint tenancy, in 1882, in three of the original joint tenants, subject to a mortgage for the amount of the trust fund. The life tenant had previously died. In 1888 part of the lands were sold for $80,000. In 1902 one of the sisters, then the sole survivor of the joint tenants, sold the rest for $140,000.

The appellee, in 1885, conveyed to this sister his interest in a house in Fairfield which they had theretofore owned as cotenants.

He did not understand the effect of either of his conveyances; received no consideration for either; and supposes that he still is a cotenant of all the real etate so conveyed. No accounting with him has ever been made for the proceeds of the lands sold, nor has he ever received anything from that source.

From a long time prior to 1877 to the date of the judgment appealed from, the appellee and his weakminded brother have been comfortably and adequately supported at the cost of the three joint tenants, in whom the title to the New York lands became vested in 1882, and of the survivors and survivor of them. Of late years they have lived in the house at Fairfield, taking their meals with their older sister (now the surviving joint tenant) who owns an adjoining estate. She is seventy-five years old and an invalid. She has cared for them affectionately and amply, but it was not shown that she or any one else had made any provision for them after her decease.

In 1892 the insane brother died. The two weakminded brothers, who were each entitled to an eighth of the trust fund, thereupon signed an instrument acknowledging the receipt of their respective shares. In fact the appellee received no part of it.

The appellee is sixty-five years old, and from an early period in life has been and still is incapable of understanding or managing business or property matters of any importance, although quite competent to attend. to such little affairs or dealings as enter into his present daily life. Twelve years ago, at the request of one his brothers, he put in his hands securities of the value of $1,100 for reinvestment, for which no accounting has ever been had. This brother died in 1899, leaving a large estate. He also at one time entrusted a less sum to another brother to invest, who afterwards told him that it had been put into a mortgage and lost by foreclosure. This brother died in 1902, and his estate is in course of settlement in New York.

The life of the appellee is happy and contented. He is not wasteful, and has now no funds in his possession which he could waste. He was a witness on the trial, but made personally no defense and had no counsel, though aware that a conservator, if appointed, would have control of his person and property. The defense was made by his sister, under whose care he lives. The appeal from the decree of the Court of Probate was taken by a niece, the daughter of a deceased brother.

The facts recited show that the appointment of a conservator was properly ordered by the Superior Court.

It is not improbable that the manner in which the appellee's property has gradually passed out of his hands into that of his immediate relatives, was the result of a family arrangement dictated by a desire to prevent its loss by the acts of sharpers, and provide for his comfortable support under favorable circumstances. What was done has nevertheless deprived him of a considerable estate, without his knowledge or consent. He is himself incompetent to decide whether it would be for his interest to endeavor to recover it. Our laws

(General Statutes, § 237) provide that "when any person having property shall be found to be incapable of managing his affairs by the court of probate in the district in which he resides or has his domicil, on the written application of . . . any of the relatives of such person, . . . said court shall appoint a conservator of such person, who, upon giving a probate bond, shall have the charge of the person and estate of such incapable person." While the word "shall" as thus used does not exclude a reasonable discretion on the part of the Court of Probate, or of the Superior Court on appeal, the property interests in the case at bar are so large, and the future prospects of the appellee, should he survive the sister who is now caring for his wants, so uncertain, that the judgment appealed from was plainly a proper one.

No facts are found which are not entirely consistent with the conclusion that he is incapable of managing his affairs. *Cleveland's Appeal*, 72 Conn. 340.

He has affairs to be managed. A right of action is property, within the meaning of this statute. If it were not, it would always be easy to strip those of their means who are incapable of protecting themselves. A right of action to reclaim title to land in this State is property in this State; and part of the lands conveyed away by the appellee are in Fairfield, where the grantee also resides.

It is contended that the existence of rights of action to reclaim lands in another State and prosecute demands against persons belonging to other States, was not a thing to be taken into account by the Superior Court in determining whether a conservator should be appointed.

The proper forum to which to resort for the appointment of an agent of the law to take charge of the person and property of an incapable person, is primarily that of his place of domicil. It is a proceeding to change his legal *status*. Such a change, as respects his general right to regulate his own movements by his own will, can only be appropriately worked out under and through the law of that territorial jurisdiction to which he personally belongs. Minor on Conflict of Laws, §§ 68, 69. The method provided by the laws

of this State for the protection of such of its people as own property, but are incapable of managing their affairs, is through a conservator to whom is entrusted the charge both of their persons and their estate. In determining whether the appellee needed such protection, it was proper to consider every right of action which he possessed, without regard to the court or jurisdiction in which suit to enforce it would be brought. Whatever it might be, it was for the court of his residence and domicil to determine whether he was competent to avail himself of the remedies proper to secure his rights, and all of his rights, and if he were not, to appoint some one able to decide and act in his behalf.

The question for the Superior Court to decide was whether it was proper to appoint a conservator. The powers of a conservator, when appointed, are fixed by the terms of the statute, so far as the law of Connecticut is concerned; though how far he can exert them in other States it will, in case of contest, be for their courts to determine.

It is found that legal proceedings are pending in New York, brought by a brother of the appellant, in the nature of a writ *de lunatico inquirendo* for the appointment of a commission to inquire into the mental condition of the appellee, and for the purpose of setting aside his conveyance of the New York real estate, and that such a commission has been appointed. That a suit for the protection of the appellee in regard to certain rights to certain real property in a State to which he does not belong, is pending in that State, does not affect the maintenance of a suit for his protection in respect to all the rights which he may possess, brought in the State to which he does belong.

It was contended at the trial, in behalf of the present appellant, that the sole object of the statute relating to the appointment of conservators is to make necessary provision for an incapable person, during his life or disability; and that the interest of a relative who may be an heir at law cannot be regarded, especially when the latter is not liable for his support. The primary object of the statute is, no doubt, that stated, but it is also adapted, and presumably

designed, to safeguard not only such means of support as the incapable person may possess, but whatever property he owns not needed for such purposes. This operates directly for his own benefit, should he become freed from his incapacities. Whether any regard should be paid to the interest of his heirs or legatees, we have no occasion to inquire.

It has also been claimed in this court, that no appointment of a conservator can be made on the application of a relative who is not of the class upon members of which the support of the incapable person, if destitute of means, could be charged by law. As this point is a jurisdictional one, it is proper to consider it, although it was not made in the trial court.

The power to appoint a conservator was originally vested in the County Court, which could exercise it of its own motion. Rev. of 1750, p. 91. In the Revision of 1821, the provision was introduced that appointments should be made on the application of the selectmen "or any relation." Rev. of 1821, p. 274, § 1. In 1841 jurisdiction of such applications was transferred to the Court of Probate (Public Acts of 1841, p. 14, § 9) and in the Revision of 1849, the words "any relative of such person" were substituted for "any relation." Rev. of 1849, p. 434, § 1. In the Revision of 1875, the words "any of his relatives" were substituted for "any relative of such person." Rev. 1875, p. 347, § 1. In the revision of the probate laws made in 1885, the latter words were replaced by "husband or wife, or any of the relatives of such person" (Public Acts of 1885, p. 488, § 81), and these same words have ever since been retained. This succession of minute changes is the best evidence that no limitation to relatives of a particular class has ever been intended. The class of those on whom the burden of supporting an incapable person might be charged by law has been defined by statute since 1715, and had it been the design of the General Assembly to confine a resort to the courts for the appointment of a conservator to those belonging to it, a distinct reference to it would unquestionably have been made.

The appellant in the Superior Court asked for a finding that many of the facts stated, including those relating to the reception from the appellee by two of his brothers of property to be reinvested, were found on his unsupported testimony. Such a finding would be immaterial. It could not be an error of law to receive his testimony for what it might be worth, nor yet to accept it on certain points as credible. Its weight was a matter wholly for the trial court.

Several exceptions were taken to rulings on evidence. Most of these rulings were so obviously correct that to discuss them would be a waste of words. Two went to exclude evidence which should have been admitted, but, as it was subsequently admitted and the finding accords with it, no injustice was done.

There was no merit in the motion to correct the finding. That sufficiently presented every point of law which the appellant desired to make.

There is no error.

In this opinion the other judges concurred.