## JOHN J. NICHOLS vs. SUSAN W. NICHOLS.

Third Judicial District, New Haven, January Term, 1907.

BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

Where one of several grantors seeks to have a conveyance of land set aside upon the ground of his mental incompetency, all the other grantors as well as the grantees should ordinarily be made parties to the suit, in order that the court may make a final determination of the controversy and do complete justice to all persons interested. Where, however, the object sought is not the annulment of the deed or a reconveyance of the property, but only an accounting for the plaintiff's share of the rents and profits and also of the purchase price, all of which were received by the defendant, one of the plaintiff's cograntors, there is no apparent necessity for making all the other grantors parties to the suit.

As a general rule a deed will not be set aside on the ground of the grantor's incompetency, if the grantee was ignorant of it and acted fairly and in good faith, unless the consideration received be refunded or the grantee be restored to his original position, and injustice be thus avoided.

Courts of equity look with favor upon family arrangements and settlements, fairly entered into, tending to avoid litigation and to promote the peace and security of the household and the preservation of the family property. But if the result of such an arrangement deprives one member of the family, who is practically *non compos mentis*, of his share of the family property without consideration, vesting it and its avails in another member of the family without making any provision for the support of the incompetent person in case he survives the recipient, a court of equity may well require the latter to account as a trustee *ex maleficio* for the property or its avails so received, although there was no actual fraud or corrupt motive upon the part of any of the parties to the transaction.

An unfair feature of a family arrangement may be set aside without destroying the entire settlement.

The rule that equitable remedies are ordinarily barred when the statute of limitations has barred the legal remedy, does not apply when the plaintiff has no knowledge of the necessity of taking any action to protect his interests, is not chargeable with negligence or laches, and the rights of third persons have not been prejudiced by the delay.

The deed of a mentally incompetent person is voidable, but not void.

The test of one's mental capacity to make a particular deed is whether at the time of its execution he possessed understanding sufficient to comprehend its nature, extent and consequences.

The trial court found that the plaintiff did not have such capacity and was not of sound mind. *Held* that upon the facts found it could not be said that it erred in reaching this conclusion.

The defendant offered evidence of the declarations of some of the plaintiff's brothers and sisters in respect to his mental competency, made in his absence. *Held* that these were properly excluded, there being no question of actual fraud or corrupt motive upon the part of the defendant.

Argued January 23d—decided April 11th, 1907.

SUIT to secure an accounting for the proceeds of sales of real estate in which the plaintiff had an undivided interest, and for other equitable relief, brought to and tried by the Superior Court in Fairfield County, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Goodwin Stoddard*, and *Alfred S. Brown* of New York, for the appellant (defendant).

*Stiles Judson*, for the appellee (plaintiff).

HALL, J. The plaintiff, John J. Nichols, who brings this action through his conservator, Wallace M. Bulkley, appointed in 1903, is one of nine children of the Rev. Samuel Nichols and Susan N. Nichols. His brothers and sisters were George, Effingham, William, Charles, Samuel, Alexander, Maria, and Susan W. Nichols, the defendant. Their mother, Susan N. Nichols, died in 1872, and by her will, after giving to her husband the use and income during his life of all her real and personal estate, devised to eight of her said children, not including Charles, two pieces of real estate in New York City, one known as the Cedar Street property and the other as the Maiden Lane property, and to the plaintiff and his sisters, Maria and the defendant, the homestead on Greenfield Hill, in this State, consisting of a dwelling-house and about two acres of land, together with the personal property thereon. In her will she charged George, Effingham, William, Samuel, Alexander, and the plaintiff, each, with the payment of the sum

of $2,500, amounting in all to $15,000, to five of her said children named as executors of her will, to be held by four of them in trust for the support of her son Charles, and upon his death, without issue, to be paid to his surviving brothers and sisters. William conveyed his interest in said property to Alexander in 1875. Rev. Samuel Nichols died July 17th, 1880, and Charles died November 22d, 1892, without issue.

The complaint contains two counts. The first alleges, in substance, that on March 1st, 1877, the plaintiff, when from "infirmity of mind and mental impairment" he did not understand the purport or legal effect of the instrument he was signing, was induced by the request of his brother Effingham and the defendant, and by the undue influence exerted by them for the purpose of excluding the plaintiff from his said interest in said estate, and for the purpose of wrongfully obtaining his said interest for their own advantage, to join with his brothers and sisters, excepting Charles, in executing, without having received any consideration therefor, a deed releasing and conveying, subject to said life estate of the Rev. Samuel Nichols and to said charge of $15,000, his and their respective interests in said New York property as tenants in common, to George, Effingham, Alexander, Maria and the defendant, as joint tenants, and that the plaintiff's interest so released was of the value of about $40,000 ; that on the 10th of May, 1882, said five joint tenants, through an intermediate grantee, conveyed said New York properties to Effingham, Alexander and the defendant, as joint tenants ; that on February 21st, 1888, said last-named grantees conveyed said Cedar Street property to the Mutual Life Insurance Company of New York ; that said Effingham died November 4th, 1899, and Alexander died June 14th, 1900, and that the title to said Maiden Lane property thereupon vested in the defendant by operation of the law of joint tenancy ; that from July 17th, 1880, to February 21st, 1888, Effingham and the defendant collected and appropriated to their own use the rents of the Cedar Street property, and from

July 17th, 1880, to November 4th, 1899, the rents of the Maiden Lane property; and that the defendant from November 4th, 1899, to September 30th, 1902, collected and appropriated to her own use the rents of the Maiden Lane property, and also appropriated to her own use the sum of $140,000, which she received for the sale of the Maiden Lane property on September 30th, 1892.

The second count alleges, in substance, that on the 21st of September, 1885, when the plaintiff was in the same weak and impaired mental condition described in the first count, and when he did not understand the purport or legal effect of the instrument he was signing, he was induced, by the request of his brother Effingham and the defendant, and by their undue influence exerted for the purpose of depriving him of his one-third interest in said Greenfield Hill property, of the value of about $3,500, and of obtaining said interest for their own advantage, to release to his sister Susan W. Nichols, the defendant, all his interest in said Greenfield Hill real and personal property, without having received any consideration therefor; and that the defendant has ever since used and possessed said property.

The complaint asks (1) for a judgment for an accounting for the proceeds of the sale of the Maiden Lane property, and for the rents and profits of that property and of the Cedar Street property; (2) judgment for the amount found due on such accounting; (3) that the deed of the Greenfield Hill property be set aside and the plaintiff be restored to his interest therein, and in said personal property; (4) for an accounting for the rents and profits of the Greenfield Hill property and the value of the use of the personal property; and (5) for $50,000 damages.

The defendant's demurrers to the complaint and to the first and second prayers for relief, presenting questions which were also made and decided under the subsequent pleadings, were overruled by the trial court.

The answer admits the execution by the plaintiff and others of the deeds described in the complaint, and the plaintiff's transfer to the defendant of his one-third interest

in the Greenfield Hill property. It also admits that the defendant and her brother Alexander have received and appropriated the rents and profits of the New York City property, and that the defendant has received and appropriated the avails of the sale of the Maiden Lane property, and has used the Greenfield Hill property as alleged, but denies that said conveyances were without consideration. The answer further denies that such deeds were procured in the manner and for the purpose alleged in the complaint; that the plaintiff's mind was at that time infirm and impaired, as alleged; and that the values of the plaintiff's interests in said properties were as great as alleged. It also alleges affirmatively that the causes of action set forth in the first count did not accrue to the plaintiff within six nor within twenty years, and that those described in the second count did not accrue to the plaintiff within six nor within fifteen years, next preceding the commencement of this action; that since the dates of the execution of said deeds the position of the parties thereto has been changed; and " that the plaintiff is barred by his own negligence and acquiescence, by lapse of time and want of equity, from maintaining this action."

The plaintiff's reply denies said affirmative allegations of the answer, and alleges that the Maiden Lane property was conveyed to an innocent purchaser in another State, and that it cannot be annuled; that at and ever since the time of the execution of said deeds by him, the plaintiff had been of unsound mind and incapable of understanding their meaning and effect, or of taking any intelligent action to revoke them or to require an accounting; and that said conveyances were procured by the defendant and her brother Effingham with full knowledge of the plaintiff's said mental condition.

These averments of the reply were denied by the defendant.

Upon the questions thus raised by the pleadings as to the mental condition of the plaintiff at the time and since the conveyances were made, the consideration which he re-

Nichols v. Nichols.

ceived for them, and the manner in which, and the purpose for which they were procured, the trial court has found, in substance, these facts :—

The plaintiff is now sixty-nine years of age and unmarried. From an early period of his life he has been weak and deficient in intellect, and on March 1st, 1877, and for a long time prior thereto, although not entirely bereft of mental capacity, judgment, and discretion, he was, and ever since has been, incapable of understanding or managing business or property affairs of any consequence, intricacy, or importance, or which required the exercise of discretion or judgment. He has been during said period and still is so deficient in mind as to be unable to understand any of the papers relating to the inheritance from his mother, and has an appreciation only of the most simple affairs of life. He is not now, and has not been since a date prior to March 1st, 1877, of sound mind. By reason of mental infirmity he had no appreciation or understanding of the meaning and effect of the conveyance in which he joined, of the New York City property on March 1st, 1877, or of the conveyance of his interest in the Greenfield Hill property of December 21st, 1885, but has ever since supposed that said properties were still owned by the surviving members of the family in equal shares. He has never by himself had sufficient understanding to enable him to consider the effect, upon his property rights or his future needs, of said transactions, nor to rescind said conveyances, nor to take any appropriate steps to protect his interests in any manner. He had no understanding of the transaction in which he and all of his brothers and sisters signed an instrument acknowledging that they had received their respective shares of the $15,000 given by their mother's will for the support of Charles, and he never received any part of said sum. He had no knowledge of the sale of the Cedar Street property. The plaintiff's brothers Charles and Samuel have been inmates of insane retreats, and his sister Maria is of weak intellect.

There was no consideration given to the plaintiff or

agreed to be given to him for the transfer of his interest in said New York City and Greenfield Hill properties. So far as he was concerned they were voluntary transfers of which he knew nothing. No agreement was ever entered into with him by the defendant or Effingham for the acquiring of the plaintiff's interest, and no agreement for his support or maintenance has ever been made by the defendant or any one else. During the argument of the case in the trial court, counsel for the defendant offered to have executed a written agreement binding the defendant and her estate for the plaintiff's support. Since his father's death the plaintiff has always lived at the homestead on Greenfield Hill as one of the family, consisting of Alexander, Samuel, the defendant and himself. After the death of his father, Alexander purchased and conveyed to the defendant twenty-five acres of land contiguous, and a new house has been built upon it. Maria conveyed her interest in the homestead, under the will, to the plaintiff and the defendant in 1882. The family have lived comfortably and well, and always in entire harmony, and have been kind, considerate, and affectionate toward each other. Since his mother's death the plaintiff has been cared for by the defendant, and also by Alexander and Effingham until their deaths. The defendant, who has had general charge of the place and household, has looked well to the comfort of the plaintiff, and he has enjoyed the same home comforts that she has. He has paid nothing for his board, clothing or necessaries; has never earned or tried to earn a livelihood, and has no property or means other than his interest in the property which he has so conveyed away, and is dependent for his support upon the bounty of the defendant. The plaintiff's proportionate share of the income received from the New York property was largely in excess of the reasonable value of his maintenance at the homestead by his brothers and sisters. The plaintiff has been paid no part of said income, nor has there been any accounting to him, which he was capable of understanding, of the income or proceeds of said prop-

erty.   He received no part of the proceeds of the sale of the Cedar Street property.

The plaintiff executed the deeds of the New York City and Greenfield Hill properties because requested to sign his name by Effingham, or the defendant, or some one acting for them.   He was led to execute them through the paramount influence of Effingham acting for himself and for the defendant, and through the undue influence of Effingham, who was for many years a practicing lawyer in New York City, and had assumed the management of the New York real estate and. was looked up to by all his brothers and sisters as the family guide and business adviser, and in whom the plaintiff had implicit confidence, and to whom, as well as to the defendant, though in a lesser degree, he was obedient.   All the parties to said deeds who had sufficient capacity to understand them were aware of the plaintiff's mental infirmities.

The purpose of the conveyances in question was to exclude the plaintiff and Samuel from their interest in said real estate and to vest the legal and beneficial title to it in said grantees as joint tenants, so as to vest the family property in the surviving grantee.   It was the further purpose that the family homestead on Greenfield Hill should be maintained from the income of all the property, by the defendant and Alexander, as a home for themselves and the plaintiff and Samuel, and where the two last-named should be supported; and for the benefit of the other grantees who might desire to visit there.   Subject to these uses it was intended that said income should be enjoyed by said grantees or the surviving grantees.   Effingham believed this disposition of the property " would provide a home for those members of the family who could not care for themselves, Samuel and John, and leave the management of the property in the hands of those likely to live the longest and those best able to take care of it, and in the end be for the best interest of the family."   The defendant had knowledge of this purpose and approved of it.   In all Effingham did in this matter he acted for the

defendant as well as for the other grantees. The plaintiff never heard of said purpose or arrangement, and never knowingly acquiesced in it.

The plaintiff, the defendant, and Maria, are the only survivors of said nine brothers and sisters. Maria has for many years resided in Albany, New York. Heirs of Effingham and William reside in New York City. Thorn, to whom the Maiden Lane property was sold, resides in New Jersey.

On March 1st, 1877, the market value of the Maiden Lane property was in excess of $59,000, and the Cedar Street property in excess of $39,000. The consideration of the sale of the Cedar Street property in 1888 was $80,000.

The plaintiff was a witness at the trial. The defendant because of old age and ill health did not testify. The conservator of the plaintiff was appointed upon the application of a daughter of the plaintiff's deceased brother William.

Upon these facts the defendant claimed generally: (1) that the plaintiff could not maintain the action on account of the want of necessary parties; (2) that the statute of limitations was a bar to the action; (3) that the plaintiff was prevented by laches from maintaining the action; (4) that the deeds in question should be sustained as parts of a family arrangement; (5) that the facts showed that the plaintiff had sufficient capacity to make the deeds in question.

The court adjudged that the defendant account under prayers for relief 1, 2 and 4, and that judgment be rendered for the plaintiff for the amount found due on such accounting.

Questions relating to the transactions described in this case were decided in *Wentz's Appeal*, 76 Conn. 405, 56 Atl. 625, in which we held that a conservator was properly appointed over Samuel Nichols; and in *Nichols* v. *Wentz*, 78 Conn. 429, 62 Atl. 610, in which it was held that Samuel Nichols was qualified to make a will.

Nichols v. Nichols.

In the case at bar the plaintiff was not required to make the other grantors of the deed of March 1st, 1877, parties defendant. The reason for requiring all the parties to voidable instruments like those here in question, to be brought into court in an action in equity to set them aside, is that the court may be enabled to make a final determination of the matter in controversy and to do complete justice to all the parties concerned. *Shields* v. *Barrow*, 17 How. (U. S.) 130. "The general rule in equity requires that all persons interested in the subject of the action should be made parties, in order to prevent a multiplicity of suits and secure a final determination of their rights." *Mahr* v. *Norwich Union Fire Ins. Soc.*, 127 N. Y. 452, 460, 28 N. E. 391. "The governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit." 1 Pomeroy's Eq. Jurisp. (3d Ed.), § 114. Courts of equity will not permit one seeking to repudiate a deed or contract to gain any undue advantage over other innocent parties to it, but in setting it aside will endeavor to restore them to their original positions. 2 Pomeroy's Eq. Jurisp. (3d Ed.), § 915. As a general rule a deed will not be set aside on the ground of the grantor's incompetency, when the grantee was ignorant of it and has acted "fairly and in good faith, unless the consideration received be refunded or the grantee restored to his original position, and injustice thus avoided." *Coburn* v. *Raymond*, 76 Conn. 484, 489, 57 Atl. 116.

But these rules do not make all the other grantors of the deed of March 1st, 1877, necessary parties to this action, for the reasons that it neither appears that the plaintiff has received anything which he can restore to these parties; nor that any of said other grantors were induced by the plaintiff's conveyance to change their title from that of tenants in common to that of joint tenants; nor that any one of them has suffered loss or disadvantage by reason of such change in their title which would entitle him to be

restored to his original position; nor that said other parties to the deed have any interest in the funds which the defendant is charged with having received, which can be injuriously affected by an adjudication of the respective rights of the parties in court. *Russell* v. *Clark*, 7 Cranch (U. S.) 69.

There was no consideration, either concurrent or executory, for the plaintiff's deed of March 1st, 1877. He neither received nor was promised anything for it. The maintenance which he afterward received was paid from the net income of the interest in the New York property which he conveyed away, and the judgment of accounting contemplates a proper allowance to the defendant for the cost of such maintenance.

It nowhere appears that the six grantors, other than the plaintiff, of the deed of March 1st, 1877, or any of them, were induced by the plaintiff to execute the various deeds by which they parted with their interests in the New York property and which resulted in the sale of all of it. It merely appears that the plaintiff, at the request of six of his brothers and sisters, conveyed to five of them as joint tenants his one-eighth interest as tenant in common in that property by the same deed by which they conveyed to the same grantees their respective interests as tenants in common in the same property. It was clearly the intention of the other grantors of the deed of March 1st, 1877, and the deed called the deed of May 10th, 1880—the grantors in which were the same as in that first named, with the omission of John and Samuel—to make such conveyances of the New York property, and so divest themselves of all title to it, that while Effingham, Alexander and the defendant, the joint tenant grantees in the last named deed, or any of them, lived, they could give a good title to any purchaser, and that upon the death of Alexander and Effingham before that of the defendant, the title to such part of it as had not then been sold should vest absolutely in the defendant. The deeds for carrying out this purpose were executed by said other grantors with

full knowledge, on the part of those of sound mind, of the plaintiff's mental infirmities. These purposes of these grantors have been fully accomplished. The Cedar Street property was sold by Effingham, Alexander and the defendant in 1888, and the Maiden Lane property by the defendant in 1902. None of these conveyances are sought. to be set aside by this action, and the effect of them is that none of said other parties to the deed of 1877, and none of their representatives, have any such interest in the rents or the proceeds of the sale of the New York property appropriated by the defendant in accordance with the purpose of said other parties, as renders them necessary parties to this action. Maria, the only survivor of said nine children except the plaintiff and defendant, as well as the representatives of those who have died, reside without this jurisdiction. None of the brothers and sisters, except the plaintiff, the defendant, and Maria, ever had any interest in the Greenfield Hill property under the will, and none but the plaintiff and defendant were parties to the plaintiff's conveyance of his interest in that property in 1888. Although it is found that Maria is of weak intellect and that Samuel's intellect was impaired, it was not necessary to join them or their representatives as parties in order to prevent multiplicity of suits, upon the theory that they are also entitled to an accounting by the defendant. Samuel gave all his property by will to the defendant, and the finding does not clearly show that either Samuel or Maria was of such impaired intellect as to be entitled to an accounting from the defendant.

It is urged that the defendant ought not to be required to account, because the deed of March 1st, 1877, was a part of a family arrangement which has been observed by all the brothers and sisters for a long period of years.

Courts of equity have looked with favor upon family arrangements and settlements, fairly entered into, and tending " to the peace or security of the family, to the avoiding of family disputes and litigation, or to the preservation of family property," even where there has been

no question of doubtful or disputed rights, when it appeared that the " motive of the agreements was to preserve the honor or peace of families or the family property." *Hoghton* v. *Hoghton*, 15 Beav. 278, 300 ; *Good Fellows* v. *Campbell*, 17 R. I. 402, 406, 22 Atl. 307 ; *Edwards* v. *Edwards*, 32 Conn. 112, 114. But the defendant is not holding the rents and the proceeds of the sale of the New York properties under the arrangement shown by the deed of March 1st, 1877. It is by the deed of May 10th, 1882, to which the plaintiff was not a party, that the defendant becomes the surviving joint tenant. Had that deed not been executed, Maria would still be a co-joint-tenant with the defendant, and the latter could not alone have sold the Maiden Lane property or have appropriated to herself the avails of a sale of it.

Again, the trial court has not by its judgment set aside the entire so-called family arrangement, but has treated it as operative except as the judgment requires the defendant to now pay to the plaintiff a sum to be determined by an accounting, for the receipts from the plaintiff's interests in said properties under the will. In view of the fact that the plaintiff, because of mental infirmity, did not understand the nature and purpose of the so-called family arrangement; that it deprives him of all his property without his consent, and without making any provision for his support in case he survives the defendant, which is certainly by no means impossible ; the trial court correctly held that the defendant was not entitled under the claimed family arrangement to continue to hold the avails of the plaintiff's interest in said properties. An unfair feature of a family arrangement may be set aside without destroying the entire settlement. *Hoblyn* v. *Hoblyn*, L. R. 41 Ch. Div. 200 ; *Turner* v. *Collins*, L. R. 7 Ch. App. 329.

The plaintiff is not barred by lapse of time from maintaining this suit. The relief asked for is equitable, and the effect of the judgment is to require the defendant to account as a trustee *ex maleficio*, or trustee of a constructive trust, for the funds which she may properly be regarded as

having received from his interest in the properties in question. The New York City property having been sold to innocent purchasers, she had the right to pursue the proceeds of the sale without attempting to disturb in any way the deeds to third persons. *Gardner* v. *Ogden*, 22 N. Y. 327 ; *Murphy* v. *Whitney*, 140 id. 541, 35 N. E. 930.

While the statutes of limitation referred to do not in terms extend to suits in equity, it is true that equitable remedies must be sought without unreasonable delay, and that in analogy to such statutes courts of equity ordinarily apply rules of limitation which will bar remedies in equity that are barred at law. But this rule is not applicable when the person seeking such relief has no knowledge of the necessity of taking any action to protect his interests, and is not chargeable with negligence, and the rights of third parties have not been prejudiced by the delay. *Jeffery* v. *Fitch*, 46 Conn. 601, 605.

The finding of the trial court regarding the plaintiff's mental condition and his entire ignorance of the necessity of taking any steps to protect his rights, relieve him from any charge of *laches*, and the facts before us fail to show that the rights of the defendant have been so prejudiced by the delay that the present action should not be allowed to be maintained.

The said deeds of the plaintiff, executed before the appointment of a conservator over him, were voidable but not void. *Coburn* v. *Raymond*, 76 Conn. 484, 488, 57 Atl. 116. They were voidable because under the finding the plaintiff was *non compos mentis*, within the legal meaning of that term as applied to the capacity of a person to make valid contracts. The test of his mental capacity to make the deeds in question was whether at the time of executing them he possessed "understanding sufficient to comprehend the nature, extent and consequence" of them. 1 Swift Dig. 173 ; *Hale* v. *Hills*, 8 Conn. 39, 44. The trial court has very clearly found he did not, and that he was "not of sound mind." The trial judge saw and heard the plaintiff upon the witness-stand. There was evidence that

his mental condition had been the same since his early manhood as it then was. Upon the facts found and the evidence before us we cannot say that the trial court erred in reaching the conclusion it did upon this question.

The trial court properly excluded the evidence offered by defendant of the declarations upon the subject of the plaintiff's competency, made in the absence of the plaintiff, by some of his brothers and sisters, among whom was the defendant, who were present at the time Maria executed the deed conveying her interest in the Greenfield Hill property to the plaintiff and defendant, and also the evidence offered by defendant of the declarations of Effingham and William upon the same subject. That those of his brothers and sisters who were themselves of sound mind knew the actual mental condition of the plaintiff can scarcely be questioned. It was evidently the view of the trial court that the defendant and Effingham and others could not, upon the facts proved, be regarded by the law as having acted in good faith, and that the deeds must in law be regarded as having been procured by undue influence, although it appeared that none of the parties had acted with actual fraud or from corrupt motives. This view was correct. The opinion of the defendant and the others named, if properly proved, that the plaintiff was legally capable of executing a deed, might tend to disprove actual fraud or corrupt motives, which the court has not found, and which are not alleged in the complaint, but it would not relieve them from the charge that in law they were to be regarded as having acted as the court held they did.

Other rulings adverse to the defendant upon questions of evidence, not noticed in defendant's brief, are sustained without discussion.

There was no error in refusing to correct the finding as requested. We cannot say that certain facts, of which there was perhaps no direct evidence, and of which it is claimed there was no proof, were not justly inferable from the other facts proved. Evidence of the transfer to, and

use by, the defendant of the personal property at Green-field Hill was unnecessary, as those facts were admitted by the pleadings. To detail the evidence supporting the finding as to the facts referred to in the motion to correct would unduly extend the limits of this opinion.

There is no error.

In this opinion the other judges concurred, except HAMERSLEY, J., who dissented.