338

EDGAR LEBLANC *v.* ALBERT CAMBO ET AL.

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE No. 94710

Memorandum filed October 7, 1966

*RisCassi, Davis & Linnon,* of Hartford, for the plaintiff.

*Koskoff & McMahon,* of Plainville, *Regnier, Moller & Taylor* and *Gordon, Muir & Fitzgerald,* of Hartford, for the defendants.

MIGNONE, J. The defendants filed a motion for disclosure and production and in section D thereof moved that the plaintiff submit to a physical examination by Dr. William B. Scoville. The plaintiff filed an objection to the motion for medical examination by Dr. Scoville, "pursuant to Public Act No. 477."

The issue presented involves an interpretation of Public Act No. 477 (General Statutes § 52-178a), enacted by the 1965 General Assembly. The pertinent part thereof reads as follows: "No party shall be compelled to undergo a physical examination by any physician to whom he objects in writing submitted to such court or judge." On preliminary reading this would appear to be mandatory and permit the refusal of an examination by a named physician merely on the submission of a written objection. The intent of the legislature in passing

this enactment must be probed and ascertained, if possible.

Public Act No. 477 was submitted as house bill No. 3757 and was referred to the committee on judiciary and governmental functions. The purpose of the bill can only be superficially gleaned from the transcript of the hearing before this committee on April 8, 1965. Hearings before the Joint Standing Committee on Judiciary and Governmental Functions, Pt. 2, 1965 Sess., pp. 509-11. An attorney representing the Connecticut Trial Lawyers Association engaged in a colloquy concerning its objectives with the representative who introduced the bill. In discussing the bill, this attorney stated (p. 510): ". . . I think this simply permits the plaintiffs in a case to have a choice with regard [to] the names of doctors who are to examine the plaintiffs for the usual defendant insurance companies. I think it is pretty obvious that in many instances there are reasons why a plaintiff attorney would not want an examination by a specific doctor and either because of his own relationship or past experience or the experience of others he would feel that the plaintiff has the right to be examined of their common choosing." The representative then asked this attorney: "[H]as it been your experience that certain insurance companies, in this area at least, use one and same doctor or perhaps two, for medical examinations in all cases?" The attorney in reply observed: "Regardless of what his specialty may be they have found that, let's put it bluntly, they have found that he thinks the way they do and he is called in consistently to examine regardless of the type of injury." Then the representative asked: "Now, as a general rule, the tenor of the reports issued by these doctors, would you say they tend to underestimate the

nature and extent of the injuries?" The attorney replied, "Constantly."

The colloquy between the two further indicated that there was a question as to abuses "directed against people who have to subject themselves to this examination" and being forced to wait long periods of time. Further along in this same colloquy (p. 511), the attorney expressed his opinion that consideration should be given as to whether the doctor chosen by the insurance company is one who has a specialty in the particular type of injury that is involved. He further suggested that the insurance company could submit a number of names of qualified doctors. Then the representative brought up the question as to whether "the companies chose one or two doctors and they come back with reports which are favorable to them," and suggested that this caused delay in the disposition of cases. The attorney agreed with this observation, stating that delays in the disposition occur "because you're up against a situation where there is an underestimating of value."

It is further to be noted that the original text of house bill No. 3757 differs from the final act passed in that the original text sets out at the end thereof the following language: ". . . provided such objection is made in good faith." This is omitted in Public Act No. 477. The suggested reasons for its enactment are vague and afford no clear-cut guide as to its purpose. The question of good faith would appear to be inherent, nonetheless, in the provision of the statute. It must be noted that the first sentence in Public Act No. 477 provides that the "court or judge may order the plaintiff to submit to a physical examination . . . ." Clearly this vests a discretion in the court or judge which must of necessity carry over into the court's decision on a motion

of the plaintiff objecting to examination by a particular physician. If the effect of this statute be mandatory, then there would be no reason to have the matter come before the court on short calendar motion for the entry of a perfunctory order sustaining the objection. A reductio ad absurdum could ensue to the point that the plaintiff could object to examination by each physician selected by the defendant. It is hardly logical to conclude that this was the intent of the enactment.

Public Act No. 477, now set out as § 52-178a of the General Statutes, appears to be a further extension of § 52-178, providing that an adverse party may be compelled to testify. It might properly have been added as a provision supplementary to § 52-197, "Motion for disclosure. Rules," which is part of title 52, chapter 900, of the General Statutes, dealing with "Practice and Procedure."

In *Wentz's Appeal*, 76 Conn. 405, 409, the court construed a statute requiring that the Court of Probate "shall appoint a conservator" of an incapable person. It held that "the word 'shall' as thus used does not exclude a reasonable discretion on the part of the Court of Probate, or of the Superior Court on appeal . . . ."

In the instant matter, the plaintiff declined for the record to set out any specific grounds for objecting to examination by the named physician and relied solely on the claim that the statute is mandatory. Under the circumstances, the court must hold that it does have an inherent discretion to decide whether the objection is reasonable and should be sustained. The burden of proof thereon rests with the plaintiff to show why the edict of the statute should be invoked. Since no such testimony was adduced, the court must deny the objection.