**In re Katherine E. RETARIDES, Debtor.**

**Katherine E. RETARIDES, Plaintiff,**

v.

**AMERICAN MORTGAGE AND LOAN CORPORATION, Trustee; Connecticut Bank and Trust; Steak N'Onions, Inc., Defendants.**

Bankruptcy No. 5–82–00476.

Adv. No. 205–5–82–0555.

United States Bankruptcy Court, D. Connecticut.

April 4, 1983.

Jean M. Stawicki, Stawicki & Stawicki, Bridgeport, Conn., for plaintiff.

Samuel B. Feldman, Lublin, Lublin, Wolfe & Kantor, East Hartford, Conn., for defendant, American Mortg. and Loan Corp., Trustee.

James H. Segaloff, Lieberman, Segaloff & Wolfson, New Haven, Conn., for defendant, Connecticut Bank and Trust.

Robert H. Rubin, Nevas, Nevas & Rubin, Westport, Conn., for defendant, Steak N'Onions, Inc.

MEMORANDUM AND DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

In this adversary proceeding, the plaintiff seeks a determination as to the validity or

---

extent of various liens held by the defendants in property known as 670 Wigwam Lane, Stratford, Connecticut. More specifically, she alleges that the note secured by the defendant, American Mortgage Company, Trustee (American Mortgage), contains a usorious interest charge; that at the time the plaintiff signed the note and mortgage, she was "mentally incapable of understanding the legal significance of her actions;"[1] that the interest terms of the note are "unconscionable and inequitable;" and that American Mortgage has violated certain truth-in-lending laws. The plaintiff repeats her allegation of mental incapacity in her claim against the defendant Steak N'Onion, Inc. The plaintiff further seeks to avoid an attachment of the defendant, The Connecticut Bank and Trust Company, which stipulated to such relief being granted. Accordingly, the remainder of this memorandum concerns only the claims against the defendants American Mortgage and Steak N'Onions.

## I.

### MENTAL CAPACITY

On March 27, 1980, the plaintiff and her husband executed a promissory note in favor of American Mortgage in which they jointly and severally promised to pay the principal sum of $22,500.00 with interest at the rate of 20%. This obligation was secured by a second mortgage on the plaintiff's and her husband's residence. Similarly, the plaintiff and her husband executed a promissory note and third mortgage in favor of Steak N'Onions, Inc. in the spring of 1980. Both loans were incurred so that the plaintiff's husband might go into the restaurant business, and on all relevant documents, the signature of the plaintiff appears.

In support of her claim that she was mentally incapable of understanding the legal significance of the documents when she

signed them, the plaintiff points to the testimony of two expert witnesses. The first, a psychiatrist, saw the plaintiff on February 14 and 16, 1980. He testified in part that while "[f]rom an intellectual point of view there [was] no reason why she shouldn't [have been] able to understand,"[2] the wisdom of her decisions "might have been influenced by her emotional state."[3] The second expert witness, a psychologist, saw the plaintiff in connection with marriage therapy between February 22, 1980 and June 22, 1980. This witness conceded that he did not evaluate the plaintiff's mental capacity to understand legal documents during the therapy sessions, nor did he offer such an opinion at trial, and thus, his testimony fails to support the plaintiff's contentions in that regard.

The plaintiff also relies on the testimony of her husband who stated that for several months, he had been pressuring her to sign the subject documents. He testified, for example, that he threatened to institutionalize her when she resisted. Other evidence demonstrated that the plaintiff's resistance derived in part from a fear of the financial risk attendant to the proposed business. The plaintiff also testified that she was very nervous at the time of the signing. There is no evidence, however, that either American Mortgage or Steak N' Onions were aware of the plaintiff's psychological history or mental condition when she executed the subject documents. Further, there was no evidence that the plaintiff exhibited any signs or symptoms of mental incapacity at that time.

In determining the validity of the defendants' liens, this court must look to the law of Connecticut.[4] In *Nichols v. Nichols,* 79 Conn. 644, 66 A. 161 (1907), the Connecticut Supreme Court indicated that a grantor of real property must possess "understanding sufficient to comprehend the nature, extent, and consequences [citations omitted]"

---

1. Complaint To Determine Validity Or Extent Of Lien In Property, Second count at ¶ 4.

2. Transcript Excerpt, dated January 14, 1982 at p. 9.

3. *Id.*

4. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

of the relevant deeds. *Id.* at 657, 66 A. at 165. The burden of proving any lack of such understanding is upon the plaintiff. *See Doris v. McFarland,* 113 Conn. 594, 156 A. 52 (1931).

▇ On balance, I find that the plaintiff was mentally capable of understanding the legal significance of her actions when she signed the relevant documents. Indeed, her reluctance to execute the instruments underscores her appreciation of their legal ramifications. Because of pressure by her husband (not the defendants) her business judgment may have been impaired, but such impairment does not rise to the level of being "mentally incapable of understanding the legal significance of her actions" as alleged.

## II.

### USURY

Connecticut General Statute § 37–4 prohibits loans that charge interest in excess of twelve per cent per year. American Mortgage does not dispute that it charged interest at a rate greater than the statutory limit, but it claims that the loan comes within an exception provided by Connecticut General Statute § 37–9. That section states in relevant part: "The provisions of sections 37–4 ... shall not affect ... (3) any bona fide mortgage of real property for a sum in excess of five thousand dollars." The plaintiff acknowledges the exception, but claims that the mortgage here, for a sum in excess of $5,000.00, was not bona fide.

"Bona fide" within the meaning of Conn. Gen.Stat. § 37–9 implies good faith as distinguished from fraud or deception. *M. Lowenstein & Sons v. British American Mfg. Co.,* 7 F.2d 51 (2d Cir.1925); *Bridgeport Mortg. & Realty Corp. v. Whitlock,* 128 Conn. 57, 20 A.2d 414 (1941); *Atlas Realty Corp. v. House,* 120 Conn. 661, 183 A. 9 (1936). The plaintiff essentially contends that American Mortgage deceived the plaintiff by charging a higher rate of interest than it disclosed.

Prior to the loan closing, American Mortgage presented the plaintiff and her husband with a series of documents, including a Loan Disclosure Statement. The Loan Disclosure Statement reveals, *inter alia,* that a mortgage on the plaintiff's residence would secure the loan, that the amount of the loan was $22,500.00, that the amount financed was $20,550.00, that a prepaid finance charge was $1,950.00, and that the "Annual Percentage Rate" was 22.75%. In addition, the Loan Disclosure Statement listed other disbursements and showed that the plaintiff and her husband were to receive the balance of $14,123.17.

The plaintiff's claim of deception is based primarily on her allegation that the $1,950.00 prepaid finance charge, which was a brokerage fee, was added back into the amount financed. The only evidence that bears on the plaintiff's claim is the Loan Disclosure Statement. It appears from the Loan Disclosure Statement, however, that the amount financed did not include the $1,950.00 charge. The effect of the $1,950.00 charge was accounted for by the bold designation, "Annual Percentage Rate," after which follows the initials of the plaintiff and her husband.

▇ In sum, I find that the loan was made in connection with a bona fide mortgage for a sum in excess of $5,000.00 and conclude that the loan was excepted Conn. Gen.Stat. § 37–4. Accordingly, the plaintiff's claim, based on usury, must fail.

### III.

### UNCONSCIONABILITY

In connection with the third count, the plaintiff requests that the court reduce the "amount of the obligors' indebtedness." The plaintiff singles out the provision in the note which calls for a late charge in the amount of $10.00 for each default in monthly payments which exists for more than 10 days.

▇ A claim of unconscionability requires the court to determine whether "in the light of the general commercial background and the commercial needs of a par-

ticular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Hamm v. Taylor,* 180 Conn. 491, 495–496, 429 A.2d 946, 949 (1980). Quoting Official Comment 1 to § 2–302 of the Uniform Commercial Code. Whether a late charge is unconscionable is a question that should not be decided simply by judicial surmise. *See Hamm v. Taylor, supra,* 180 Conn. at 495, 429 A.2d at 948–949. In this proceeding, the record does not contain the information required for an unconscionability determination under the guidelines annunciated in *Hamm v. Taylor.* For instance, the record is devoid of any evidence of the common practice in the credit industry regarding late charges. The only evidence directly bearing on the commercial setting was the testimony of the plaintiff's husband, in which he stated that American Mortgage was virtually the only institution which was willing to lend him money. That testimony may or may not suggest unconscionability, depending on other factors which are not in evidence here.

## IV.

### TRUTH–IN–LENDING

Connecticut's Truth-In-Lending Act does not apply to "[c]redit transactions involving extensions of credit for business or commercial purposes ..." Conn.Gen.Stat. (1981) § 36–394(a). Here the purpose of loan affidavit signed by both the plaintiff and her husband states that the loan was taken "for the purchase of a business." This affidavit was corroborated by the testimony of the plaintiff and her husband. The fact that the plaintiff was not involved in the business does not alter the purpose of the loan within the meaning of section 36–394(a), *see Morse v. Mutual Federal Savings & Loan Assn. of Whitman,* 536 F.Supp. 1271, 1277–1278 (D.Mass.1982) (applying 15 U.S.C. § 1603(1) which is similar to Conn. Gen.Stat. § 36–394(a)), nor is the result changed by the fact that the loan was secured by a second mortgage on the plaintiff's and her husband's residence. *See Poe*

*v. First National Bank of Dekalb County,* 597 F.2d 895, 896 (5th Cir.1979) (applying 15 U.S.C. § 1603(1)); *Sapenter v. Dreyco, Inc.,* 326 F.Supp. 871, 874 (E.D.La.) (applying 15 U.S.C. § 1603(1)), *aff'd.,* 450 F.2d 941 (5th Cir.1971), *cert. denied,* 406 U.S. 920, 92 S.Ct. 1775, 32 L.Ed.2d 120 (1972). Accordingly, the plaintiff's claim, based on violation of Connecticut's Truth-In-Lending Act, must also fail.

## V.

In view of the foregoing, judgment may enter for the plaintiff in connection with the claim against the defendant, Connecticut Bank and Trust, and for the defendants, American Mortgage and Steak N'Onions, Inc., on all other counts.