SAMUEL SLABOTSKY *vs.* THE STATE DEPARTMENT OF HEALTH ET AL.

Third Judicial District, Bridgeport, April Term, 1928.
MALTBIE, HAINES, HINMAN, BANKS and WOLFE, Js.

Argued April 17th—decided June 18th, 1928.

*Philip Pond*, for the appellant (plaintiff).

*James W. Carpenter*, with whom, on the brief, were *Benjamin W. Alling*, Attorney General, *Cyril Coleman* and *J. H. Bartholomew, Jr.*, for the appellees (defendants).

MALTBIE, J.  This is an appeal from a judgment of the Superior Court sustaining the revocation of appellant's license to practice medicine by the State Department of Health upon the ground of fraud committed in procuring it.  The license was revoked at the same time as that of Mower, considered by us in our opinion in *Mower* v. *State Department of Health, ante,* p. 74, and of the others whose appeals we have also been considering.  Upon the facts, the case of this

appellant differs radically from that of any of the others as presented to us. He was born in Kansas City and graduated from a high school there. During his school course he decided to study medicine and upon graduation entered the Eclectic Medical University of Kansas City, then a recognized medical institution, and pursued a three year course of study, until the summer of 1917. He then voluntarily entered a medical unit of the United States Army and while at camp he received two diplomas from the university, one as doctor of medicine and master of surgery and the other as doctor of public health. Later he served in the medical corps overseas and at the end of the war was honorably discharged. Meanwhile the Eclectic Medical University had gone out of existence and one Alexander, who had owned its buildings and equipment, established at the same location the Kansas City College of Medicine and Surgery. Desiring to pursue his medical studies, the appellant entered this institution, and took courses from September, 1919, to May, 1920, when he was granted a regular diploma. He tried an examination before an Eclectic medical examining board of Arkansas and failed and then applied for examination in Connecticut. In his application to the Connecticut board he stated that he was a graduate of the Kansas City College of Medicine and Surgery. He failed to pass in one subject and was refused the necessary certificate to procure a license. He then took a short course in the New York Post Graduate Medical School and Hospital, receiving a certificate, and became resident physician at the hospital of Somerset County, Pennsylvania. While there he tried the examinations in the District of Columbia and failed to pass. He then applied once more to the Connecticut Eclectic Medical Examining Board for examination, again stating that he was a graduate of the Kansas City College .

of Medicine and Surgery, and that he was "a graduate from high school, one year college work." This time he passed and received the necessary certificate for him to procure a license.

This history discloses a young man who, though not a brilliant scholar, was honestly pursuing studies to enable him to qualify to practice medicine. He took a three year course in a recognized Eclectic medical school, and received its diplomas; he took a short course in a medical school in New York City, presumably in good standing; and he acquired practical experience in the Army medical corps and in hospital service. While at the Kansas City College, he took a year's course, apparently spent in honest study, and received, not an "honorary," but a regular diploma. Had he based his application for the examination upon his graduation from high school and from the Eclectic Medical University, no question as to his right to retain his license would seem possible. His fraud, if any there was, must have arisen out of his statement in his application that he was a graduate of the Kansas City College of Medicine and Surgery and his addition of the words "one year college work" to his statement as to his high school education. As to the latter, it is quite susceptible of meaning that, during one year of his high school course he pursued studies usually part of the college curriculum, and an intent to commit fraud cannot be based upon so equivocal an expression. *Fisher, Brown & Co.* v. *Fielding*, 67 Conn. 91, 110, 34 Atl. 714; *Bartholomew* v. *Derby Rubber Co.*, 69 Conn. 521, 531, 38 Atl. 45. As to the former statement, it was true that he was a bona fide graduate from the Kansas City College of Medicine and Surgery. The trial court has found that this school was not a reputable medical college and that this fact must have been known to those taking examinations who based their

applications upon graduation from it. But any fraud arising out of these facts must be based upon the appellant's nondisclosure as to them, and it is only in exceptional circumstances that fraud can be based upon nondisclosure. *Gayne* v. *Smith,* 104 Conn. 650, 652, 134 Atl. 62; *Watertown Savings Bank* v. *Mattoon,* 78 Conn. 388, 392, 62 Atl. 622. The finding shows that the head of the Kansas City College had been, before the appellant took his examination, and was at that time, in close touch with the Connecticut Eclectic Examining Board, attending and assisting in its examinations, and that the secretary of the board had received "honorary diplomas" from the college; so that the board was in a situation easily to ascertain, if it did not know, its character and the kind of instruction given. The appellant was asked nothing about the institution and in the circumstances was not guilty of fraud in not volunteering information as to its character. For like reasons, his failure to inform the board that it was not an eclectic school, cannot invalidate his license. The fact that he did not present such a certificate of good character as the statute requires is not a basis upon which the revocation of his license on the ground of fraud in procuring it can be sustained. The conclusion of the trial court that the appellant procured his license by fraud cannot be upheld.

There is error, the judgment is set aside, and the cause remanded with direction to sustain the appeal.

In this opinion the other judges concurred.