## CATHERINE A. B. BOARDMAN *vs.* C. CHARLES BURLIN-GAME ET AL.

AVERY, BROWN, JENNINGS, BALDWIN and CORNELL, Js.

Argued December 9th, 1937—decided February 1st, 1938.

*Lucius F. Robinson, Jr.,* with whom, on the brief, were *Thomas L. Archibald* and *James M. Carlisle,* for the appellants (defendants).

*William S. Locke,* with whom was *Roger W. Davis,* for the appellee (plaintiff).

JENNINGS, J. The plaintiff sued the defendants for wrongfully detaining her in the Hartford Retreat, an institution organized and conducted for the care of persons suffering from diseases of the mind, and obtained a verdict from the jury. The defendants appeal from the denial of their motion to set aside the verdict and also from the judgment, alleging error in overruling their demurrer to the complaint and in the charge to the jury.

According to the complaint, dated May 21st, 1936, the defendants are, respectively, the president and directors of the Hartford Retreat and C. Charles

Burlingame, their resident physician-in-chief, in full charge of their institution and of the patients. On July 7th, 1932, the plaintiff, pursuant to a certificate improperly issued by a physician that she was in need of treatment in a hospital for mental diseases, was violently seized at her home and forceably carried against her will into an automobile and delivered to the defendants, although the defendants knew that she was neither clearly and violently insane nor was suddenly in need of care and treatment in a hospital for the insane. The defendants refused to allow the plaintiff, upon her request, to escape but assigned her to a room, gave her a number and subjected her to the routine, discipline and surveillance characteristic of such institutions. On frequent occasions thereafter the plaintiff sought to be released from the Retreat but by false and fraudulent representations, deceit and duress she was induced to remain until December 19th, 1932, when she was discharged. The false and fraudulent representations were to the effect that unless the plaintiff signed a written consent to remain, she would be committed by the Court of Probate for the balance of her life. It was further alleged that the fact that she would be discharged if she gave ten days' written notice was concealed from her for the purpose of keeping her at the Retreat against her will. She claimed that as a result of her confinement she suffered in person and property.

To this complaint the defendants demurred on the ground that the cause of action therein stated was barred by either § 6015, § 6016 or § 6011 of the General Satutes, Revision of 1930. It was agreed that the amendments of 1935 do not apply and that the question might be raised by demurrer. *Sharkey v. Skilton,* 83 Conn. 503, 510, 77 Atl. 950. The plaintiff claimed that § 6006 controlled. These statutes (except § 6016,

which was not insisted on) are printed in the footnote. Counsel have displayed skill and ingenuity in analyzing these statutes and their scope. The situation actually before this court is, however, comparatively simple. The plaintiff admits that unless her complaint comes within the provisions of § 6006, her suit is too late. It is with that section, therefore, that we are chiefly concerned.

The history and meaning of these statutes was fully discussed in the cases of *Miner* v. *McNamara*, 82 Conn. 578, 74 Atl. 933, and *Tuohey* v. *Martinjak*, 119 Conn. 500, 177 Atl. 721. Without repeating that discussion here, it there appears that, of the present statutes, § 6011 and § 6006 are the direct descendants of those in force when procedure was governed by common-law pleading. Thus, in the *Miner* case, at page 580, we said: "For many years prior to the adoption of the Practice Act . . . one provision of our statutes had limited the time for the commencement of actions of trespass on the case to six years next after the right of action should accrue, while another had provided that no action of trespass . . . should be brought but within three years. . . . The revisers in preparing the Revision of 1888 were apparently of the opinion that since the Practice Act had abolished

Sec. 6015. LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or for an injury to personal property caused by negligence, shall be brought but within one year from the date of the injury or neglect complained of.

Sec. 6011. ACTION FOR TRESPASS OR SLANDER LIMITED TO THREE YEARS. No action for trespass to person or property, or for slanderous words, shall be brought but within three years next after the right of action shall accrue.

Sec. 6006. ACTION FOUNDED UPON A TORT TO BE BROUGHT WITHIN SIX YEARS. No action founded upon a tort unaccompanied with force and where the injury is consequential shall be brought but within six years next after the right of action shall accrue.

the distinctions between the forms of action theretofore recognized, it would be wise to dispense with the use in these statutes of the terms 'actions of trespass on the case,' 'actions upon the case,' and 'actions of trespass,' and substitute therefor definitional language of equivalent purport." The intention of the Legislature to include all common-law actions of trespass in § 6011 and actions of trespass on the case in § 6006 was not carried out with entire success as is indicated later in the opinion in the *Miner* case. Tests based on the common-law forms of action are therefore of little use and we must look to the language of the statute to determine its meaning.

We agree with the plaintiff that the basic act which gave rise to her cause of action—what the English writers call the "causa causans," as distinguished from the "causa sine qua non" (Stroud's Dictionary [2d Ed.]; *Latham* v. *Johnson & Nephew, Ltd.*, L. R. 1913, 1 K. B. D. 398, 413)—consisted in the making of the representations alleged. See also, for a discussion of causation, *Lombardi* v. *Wallad*, 98 Conn. 510, 120 Atl. 291; *Mahoney* v. *Beatman*, 110 Conn. 184, 147 Atl. 762; *Sullivan* v. *Creed*, 1904, 2 Irish Law Rep. 317. For the purpose of testing the demurrer, the further allegation that these representations were false and fraudulent is admitted to be true. The complete tortious act was therefore the procuring of the plaintiff's signature to the consents to remain by false and fraudulent representations. The ultimate question on this phase of the case is, was this tort unaccompanied by force and were the injuries consequential within the terms of § 6006 ?

An illustration from the facts of the case will make the answer plain. Under the emergency commitment the plaintiff could be legally detained for thirty days. General Statutes, § 1732. If she had been detained

against her will thereafter, the tort would have been accompanied with force and the offense would have been that form of trespass known as false imprisonment. It is alleged that before the expiration of the thirty days the plaintiff was persuaded by fraud and deceit to sign a voluntary commitment under General Statutes, § 1739. As stated in the memorandum on the demurrer: "No force as against this plaintiff is alleged. It is not an action for false imprisonment in the strict sense of the word because the plaintiff was not restrained by force nor the threat of force. She was prevailed upon to remain in the retreat by fraud and deceit. For that reason § 6011 of the General Statutes does not apply. On the other hand, inasmuch as the wrong complained of is fraud and deceit and the damages alleged are such as flow from that indirectly, the case comes squarely within § 6006. It is a cause of action for a tort without force where the damages are consequential."

The ruling on the demurrer was correct.

The finding shows that the plaintiff offered evidence and claimed to have proved the allegations of her complaint summarized above. The claims of proof of the defendants denied that any improper methods were used in procuring the consent to remain and asserted that the Retreat was a charitable institution. The defendants filed a request to charge as follows: "It appears that the defendant The Hartford Retreat is a charitable corporation and as such is exempt from any torts which might have been committed by its employees. There being no evidence that The Hartford Retreat was negligent in the selection of its employees, I direct that you find a verdict for The Hartford Retreat." The court did not so charge, but said: "If you find that The Hartford Retreat is a charitable corporation without capital

stock, as claimed by the defendants, such fact does not affect the essential issues of the case."

The plaintiff's assignments of error relate principally to the claims of proof of the defendants on this point. Examination of the evidence certified in connection with these assignments shows that either there was evidence definitely supporting these claims or the claims were proper inferences from evidence offered. "The finding in a jury case is not a determination of facts as such, but only a statement in narrative form of the evidence which the party offered, and his claims of proof. . . ." *Tuckel* v. *Hartford,* 118 Conn. 334, 335, 172 Atl. 222. In so far as these assignments attempt to put claims of proof into the finding of the defendants, they are subject to the fundamental difficulty that, though a party may offer evidence of a fact, it does not necessarily follow that he claims to have proved it. If the plaintiff wanted these deductions in the finding, she should have put them in her own claims of proof. The evidence offered by the defendants was available to her for that purpose. *Leitzes* v. *Caulkins Auto Co.,* 123 Conn. 459, 196 Atl. 145. There is nothing in the record to support these assignments of error.

"A charitable corporation like the defendant—whatever may be the principle that controls its liability for corporate neglect in the performance of a corporate duty—is not liable, on grounds of public policy, for injuries caused by personal wrongful neglect in the performance of his duty by a servant whom it has selected with due care; but in such case the servant is alone responsible for his own wrong." *Hearns* v. *Waterbury Hospital,* 66 Conn. 98, 126, 33 Atl. 593. This court was recently urged to reconsider this position. This it declined to do, saying, in *Cashman* v. *Meriden Hospital,* 117 Conn. 585, 169

Atl. 915, at page 587: "The courts are practically agreed that a charitable institution is not responsible to those who avail themselves of its benefits for any injuries that may be sustained through the negligence or torts of its managers, agents and servants." The tort here complained of was not false imprisonment—that would have been barred by the statute of limitations—but was the making of false and fraudulent representations. Such a wrong comes within the words "negligence or torts" just quoted.

The plaintiff attempts to distinguish her case from that of the ordinary hospital patient on the ground that she was an inmate against her will. If the immunity of charitable corporations were placed on the ground of waiver, there would be some basis for the argument, although her situation can hardly be distinguished theoretically from that of a person rendered unconscious by an accident, taken to a hospital and operated on while still in that condition. While various reasons for this doctrine have been advanced (*Cohen* v. *General Hospital Society,* 113 Conn. 188, 198, 154 Atl. 435), that controlling in this State is public policy. *Hearns* v. *Waterbury Hospital,* supra, 126; *Cashman* v. *Meriden Hospital,* supra.

Reasonable men could come to no other conclusion on the evidence than that the Retreat is a charitable institution and it was entitled to the substance of the charge requested. The test applied in *Canterbury School, Inc.* v. *New Milford,* 111 Conn. 203, 149 Atl. 685, as suggested by the plaintiff, referred to the sense in which the Legislature used a carefully drawn definition of a tax exempt institution. If this test is insisted on, it appears that this institution is tax exempt. The question of tax exemption is not in issue here, however, and the testimony is uncontradicted that the Retreat is organized and operated for the

public welfare without profit to itself or any individual. The mere fact that some patients pay for part or all of their care does not destroy its charitable character. *Yale University* v. *New Haven,* 71 Conn. 316, 328, 42 Atl. 87.

The following portion of the charge is assigned as error: "If you find that the plantiff has proved by a fair preponderance of the evidence that she was led to sign a voluntary commitment to the hospital by any fraud or deceit of the defendants, or either of them, or by the duly authorized agents of either of them, your verdict must be in favor of the plaintiff against such one, or both, of the defendants. If the plaintiff has failed in such proof as to either or both of the defendants, your verdict must be in favor of such one or both of the defendants against the plaintiff." The paragraph is a concise and accurate summary suitable for use in committing a fraud case to the jury. As appears from the briefs of both parties, the objection is not to the charge as such but because it is the only portion of the charge dealing with the definition of fraud and deceit or with the application of that definition to the facts of the case. The assignment of error is defective under § 362 of the Practice Book, 1934, in that it fails to specifically set forth the precise error now stressed. The appellee objects to the consideration of this assignment on that ground, citing *LeCount* v. *Farrand,* 118 Conn. 210, 214, 171 Atl. 623.

An examination of the cases cited under § 362, supra, shows that this situation is of frequent occurrence. The policy of this court is fully set forth in *Rindge* v. *Holbrook,* 111 Conn. 72, 75, 149 Atl. 231: "This court is a court established to review the decisions of lower courts to determine whether or not they have committed any errors in law in determining

particular controversies before them. *Styles* v. *Tyler,*
64 Conn. 432, 30 Atl. 165; *Nolan* v. *New York, N. H.
& H. R. Co.,* 70 Conn. 159, 39 Atl. 115; *Dexter Yarn
Co.* v. *American Fabrics Co.,* 102 Conn. 529, 129 Atl.
527. The scope of the appeal allowed to it is defined
and limited by the terms of our statute. *Etchells* v.
*Wainwright,* 76 Conn. 534, 538, 57 Atl. 121; *State* v.
*Caplan,* 85 Conn. 618, 621, 84 Atl. 280. We are not
'bound to consider' claims of error which do not ap-
pear upon the record to have been distinctly raised
at the trial; General Statutes, § 5837; Public Acts of
1929, Chap. 301, § 12; nor do we ordinarily do so. It
is true we have on occasion considered a matter which
was not so raised, as, for instance, where it was of
public moment; *Donovan* v. *Davis,* 85 Conn. 394, 399,
62 Atl. 1025; or where it went to the jurisdiction of
the lower court; *Wentz's Appeal,* 76 Conn. 405, 411,
56 Atl. 625; or where a controlling statute was over-
looked by court and counsel at the trial. *Cunning-
ham* v. *Cunningham,* 72 Conn. 157, 44 Atl. 41;
*Schmidt* v. *Manchester,* 92 Conn. 551, 555, 103 Atl.
654. But where we do this, it is not because the ap-
pellant has a right to have the question determined,
but because, in the interest of public welfare or of
justice between individuals, we are of the opinion it
ought to be done." So in *State* v. *Gannon,* 75 Conn.
206, 218, 237, 52 Atl. 727, an error in the charge was
considered although not assigned in any form. In
*State* v. *Burns,* 82 Conn. 213, 219, 72 Atl. 1083, it was
held that, although the assignment was defective,
important rulings might be considered where counsel
make them definite in their briefs. See also *Central
Railway & Electric Co.'s Appeal,* 67 Conn. 197, 222,
35 Atl. 32; *Monroe National Bank* v. *Catlin,* 82 Conn.
227, 229, 73 Atl. 3; *Humphrey* v. *Gerard,* 84 Conn.

216, 222, 79 Atl. 57; *Johnson* v. *Cooke*, 85 Conn. 679, 683, 84 Atl. 97; *Wicks* v. *Knorr*, 113 Conn. 449, 456, 155 Atl. 816.

The plaintiff's cause of action was based squarely on the claimed fraud and deceit of the defendants. The charge is barren of any definition of those terms. While the facts were discussed to some extent, no explanation was given as to what facts were necessary to satisfy the definitions of fraud and deceit. The defendants were entitled, even in the absence of a request to charge, not only to the legal definitions but to have them applied to the facts of the case. *Bjorkman* v. *Newington*, 113 Conn. 181, 185, 154 Atl. 346; *Laukaitis* v. *Klikna*, 104 Conn. 355, 132 Atl. 913; *Williams* v. *Maislen*, 116 Conn. 433, 165 Atl. 455. In *LeCount* v. *Farrand*, supra, one reason for the refusal to consider unassigned errors was the absence of any showing that the appellant may have suffered prejudice. Such prejudice was shown here. The failure to instruct the jury more fully on this, the fundamental issue in the case, was error.

There remains only the ruling on the motion to set aside the verdict. The motion of the Retreat should have been granted for the reasons stated in discussing its charitable character. *Brown* v. *New Haven Taxicab Co.*, 92 Conn. 252, 102 Atl. 575; *Munson* v. *Atwood*, 108 Conn. 285, 288, 142 Atl. 737. The claim as to Dr. Burlingame's personal liability was confined to his nondisclosure of the fact that the plaintiff could sign herself out on written notice. His contacts with the plaintiff were occasional and the circumstances were not such as to make the nondisclosure fraudulent. As stated by the defendants, nondisclosure as a species of fraud occurs only in exceptional cases. *Slabotsky* v. *State Department of*

*Health,* 108 Conn. 88, 92, 142 Atl. 477. The motion of Dr. Burlingame should also have been granted.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.