## MERCIE W. EDWARDS, EXECUTRIX
### vs.
## GRACE HOSPITAL SOCIETY

Superior Court    New Haven County    File #54663

### MEMORANDUM FILED JUNE 24, 1938.

George W. Crawford, of New Haven, for the Plaintiff.

Day, Berry & Howard, of Hartford; D. L. O'Neill, of New Haven, for the Defendant.

McEVOY, J.  The defendant filed a special defense which reads as follows:

1.  The defendant, at all times mentioned in the complaint, was and is now a charitable corporation without capital stock whose members derive no profit from its operation.

To this defense the plaintiff has filed a demurrer as follows:

1.  The fact that the defendant is a charitable corporation without capital stock whose members derive no profit from its operation, is no defense to the particular acts, negligence, breaches and defaults set forth in the complaint.

2.  The fact that the defendant is a charitable corporation without capital stock whose members derive no profit from its operation, does not exonerate the defendant from liability for the corporate neglect in the performance of its corporate duties as set forth in the complaint.

Upon argument briefs and in a letter supplementing the defendant's brief, the defendant claimed that the demurrer should be overruled because it is not applicable to the alleged negligence set out in the complaint for the reason that the defendant claims that the complaint is broad enough to include

negligence other than "corporate neglect" of the defendant corporation.

The complaint is so drawn and the second paragraph of the demurrer is so worded as to indicate a clear intent on the part of the plaintiff to rely, for her recovery, solely upon the alleged "corporate neglect" of the defendant.

Bearing these claims in mind this memorandum is addressed only to the question of whether or not the special defense, as pleaded by the defendant, does, in the language of the demurrer "exonerate the defendant from liability for the corporate neglect in the performance of its corporate duty."

In our leading Connecticut case, *Hearns vs. The Waterbury Hospital,* 66 Conn. 98, it appears that the Court was careful to refrain from any decision upon the question of corporate neglect as follows:

At page 104, bottom of the page, it was said: "The negligence which caused the injury is stated to have been that of the attending surgeon and attending nurses. . . ."

At the top of page 105 it was said: "Possibly it might be claimed that the complaint raises the further question of the defendant's liability for its *own* negligence. . . .but such claim has not been made, and we do not think it can properly be made upon this appeal. . . ." (Italics mine.)

Further, on page 105: "The conclusion we have reached makes it unnecessary to pass upon the question whether the hospital's attending physicians can really be regarded as standing to the corporation in the relation of servant to master, or to discuss the nature and extent of the corporate liabilities of an eleemosynary corporation."

At the top of page 115: "There is no case which decides (that) there is an exception from *all* liability in favor of public or charitable associations." (Italics mine.)

And finally at page 126: "It is enough that a charitable corporation like the defendant—whatever may be the principle that controls its liability for corporate neglect in the performance of a corporate duty . . ."

It is very evident, therefore, that, in the Hearns case, the question of liability for corporate neglect, as such, was not only not decided but was distinctly and expressly eliminated from the decision.

Many reasons are assigned in the various cases for the exemption from liability for the acts or negligence of servants and agents in whose care and selection due care is exercised by the hospital corporation as such.

At page 125 of the Hearns opinion, the following appears: "This defendant does not come within the main reason for the rule of public policy which supports the doctrine of *respondeat superior;* it derives no benefit from what its servant does, in the sense of that personal and private gain which was the real reason for the rule. Again, so far as the persons injured are concerned, especially if they be patients at the hospital, the defendant does not 'set the whole thing in motion' in the sense in which that phrase is used as expressing a reason for the rule. Such patient, who may be injured by the wrongful act of a hospital servant, is not a mere third party, a stranger to the transaction—he is rather a participant."

Another basis for the exemption is the claim that the funds which go to the operation of the hospital are trust funds and that the entering of judgment against the hospital would result in the taking of the funds for an unlawful or unwarranted or unrecognized purpose and would therefore be a violation of the trust.

A different view was taken in *Glavin vs. Rhode Island Hospital,* 12 R.I. 411. This case is quoted in the Hearns case at page 120, where it is said:

". . . The result of the English cases is: (a) Where there is a duty, there is a *prima facie* liability for neglect; and a corporation being created for certain purposes which cannot be executed without the use of care or skill, it becomes the duty of the corporation to exercise such care, and funds acquired for the purposes of its creation will be applied to satisfy a judgment for its default in this respect. (b) The corporate funds can be applied notwithstanding the trusts for which they are held, because the liability is incurred in carrying out the trusts and is incident to them. . . ."

In the recent case of *Cashman vs. The Meriden Hospital,* 117 Conn. 585, the complaint was in four counts and a demurrer was filed and it was overruled by the trial court on the ground that "the facts alleged in the special defense constituted a good defense to the claim of negligence set up in the second count of the complaint."

The second count of the complaint was based upon negligence on the part of the servants and agents of the hospital.

In that complaint there was no express allegation of "corporate neglect."

At page 587 of that case, quoting from the Hearns case, our Supreme Court said: "Whatever may be the principle that controls its liability for corporate neglect in the performance of a corporate duty, etc. . . ."

Further along on page 587 of the Cashman case the Supreme Court used this language: "The courts are practically agreed that a charitable institution is not responsible to those who avail themselves of its benefits for any injuries that may be sustained through the negligence or torts of its managers, agents and servants."

Upon the argument of this demurrer it was claimed by the defendant that the word "managers" in this opinion was intended to mean that the managers, as such, stand in the place of the corporation and that their acts are what the plaintiff has elected to style "corporate" acts as distinguished from the acts of those employed by the corporation. It would seem that the use of the word "managers" in the Cashman case, since the word is used in connection with agents and servants, is used to indicate those acting under the direction of the corporation and not for it, that is, in its corporate stead or place.

The language of the Cashman case was quoted with approval in the recent case of *Boardman vs. Burlingame,* 123 Conn. 646, 652, 653.

The reasons assigned by the various courts in the United States and England for their judgments that the eleemosynary corporation is not liable for the negligence of its agents or servants in whose selection it has exercised reasonable care are many and varied. Some are based upon the theory that, to permit a judgment to be entered against the corporation, would naturally result in a diversion of the property of the corporation and this would not be in accord with the intent of those contributing to the funds; others, that the principle of *respondeat superior* does not apply; others, that it would be against public policy to permit a diversion of the funds, and so on. Another reason found in a number of the cases is that the person who accepts the benefit of the hospital treat-

ment places himself on a par with the agent or servant and that therefore the negligence of the agent or servant is also the negligence of the participating patient.

Apparently the decision of the question as to the liability of an eleemosynary corporation for its "corporate neglect" as distinguished from its liability for the negligence of its agent or servant, must be based on a question of sound public policy.

Admittedly such corporations are organized and chartered so that they may act for the public good. Would it be consistent with the general public good to hold that corporations so acting by virtue of State granted authority are in a more impregnable situation than even the State itself? It is elementary that, although there was no common-law liability to that end, yet the State of Connecticut has since a very early date, by statute, made towns and other branches of the State government liable for defective roads and bridges. With the advent of the State built and maintained highways the same statutory liability was extended through the permission of the State to sue the Highway Commissioner.

Money paid, by way of taxes, for the support of the State and its governmental branches, is not, in the first place, paid or exacted upon any theory other than to apply it for State purposes. The payment of judgments for violation of statutes governing defective roads or bridges is not in the original concept of a State expense. It would seem that this extension of the theory of liability of the State and its branches is based upon a doctrine of public policy which ought to be carefully considered and compared in its application to the eleemosynary corporation.

To hold that such a corporation should be freed from any and all liability under any and every circumstance would not be according to the policy of our law. It would not tend to induce the exercise of reasonable care which should characterize and limit the relations of all whose actions affect, directly or indirectly, the health, safety or lives of others.

It would be a distinct disadvantage and prejudice to the ordinary person who enters a hospital if the law were so that, no matter what the corporation itself, as distinguished from the servant or agent, did, yet that that person who so enters, relying upon the supposedly careful management and the supply of proper equipment, should be without any redress in

case of a corporate neglect. Such a principle is not found anywhere among our cases.

For the reasons stated the second paragraph of the demur-rer to the special defense is sustained. The first paragraph, which goes to the question of particular acts, negligence, breaches and default, is overruled. The purpose of the de-cision on the demurrer is to rule that the corporation, eleemo-synary though it is, is responsible for its corporate neglect as distinguished from the negligence of its employees.