JOHN B. DELANEY *v.* CITY OF HARTFORD.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued May 16—decided June 26, 1939.

*Robert G. Menasian,* with whom was *Vincent W. Dennis,* corporation counsel, and, on the brief, *Harold Borden,* for the appellant (defendant).

*Edwin M. Ryan,* with whom was *Francis P. Rohr-mayer,* for the appellee (plaintiff).

MALTBIE, C. J.  The plaintiff brought this action to recover certain damages appraised to him by reason of the establishment of new street, building and veranda lines across property he owned in the defendant city. The original appraisal of damages to him was $64,275, and the total of all damages appraised by reason of the improvement was $85,275.  The plaintiff appealed and the appraisal of damages to him was increased to $99,860, making the total of all damages appraised more than $100,000.  The charter of the city provides: "No vote or resolution of said common council, or any branch of said city government, ordering a public work or improvement which shall require an expenditure of more than one hundred thousand dollars, shall be valid and effectual unless approved by a majority vote of a city meeting, duly warned and held for that purpose, which vote shall be by ballot or voting machine."  20 Special Laws, p. 731.  The defendant claims that under this provision the city, in the absence of approval of the expenditures necessary for the improvement by a vote of the city meeting, is not obligated to pay the damages appraised to the plaintiff.

We cannot pass over without comment the fact that the board of street commissioners made and the common council has approved an assessment of benefits against the city in connection with the improvement

in an amount equaling the entire damages appraised by it and if the amount of those benefits is deducted, the total cost of the improvement, including the damages appraised, would be much less than $100,000. The only legal basis for such an assessment would be that property owned by the city was directly and immediately benefited by the street improvement in question; *Hartford* v. *West Middle School District,* 45 Conn. 462; and from the making of the assessment we would be justified in assuming that this was so. We would then be confronted with the question whether, in determining the cost of the improvement under the charter provision in question, these special benefits should be set off against the damages appraised in determining the cost to the city of making the improvement. However, as the case was presented to us this question was only incidentally argued and we shall treat the issue in the way the parties largely have done, as presenting the question whether by reason of the fact that upon the plaintiff's appeal the damages appraised to him were increased to such an extent that the total damages appraised exceed $100,000, the provision we have quoted from the charter applies.

Under the charter of the city, whenever a public work or improvement is proposed which involves an award of damages and assessment of benefits, the matter is referred to the board of street commissioners to estimate the cost, including the damages to be paid, and to make an appraisal of damages and assessment of benefits; an appeal from the board to the judge of the Court of Common Pleas for Hartford County may be taken by any property owner affected; when the time to take an appeal has expired, the board reports to the common council its doings in the matter, with its recommendations, and the council "may thereupon direct the layout or construction of such work or im-

provement at its discretion"; and even if an appeal is pending, the board may make its report and the council is authorized, in the words above quoted, to direct the layout or construction of the improvement. 17 Special Laws, p. 977; 18 Special Laws, p. 865. In the instant case the street board, during the pendency of the plaintiff's appeal, made a report to the council stating the amount of damages appraised and the benefits assessed against the city and recommended that the city proceed with the layout notwithstanding the pendency of the appeal. The council passed a resolution which was duly approved by the Mayor accepting the report, approving all the proceedings of the board and further providing that "said street, building and veranda lines are hereby established and confirmed." Subsequently an appropriation of $91,000 was made "to cover the cost of these damages and the cost of paving, relocation of sidewalks, curbs, and other appurtenances, as estimated by the board of street commissioners."

The confusion and litigation which might result if the charter provision were held to apply in such a case as this is apparent. The common council might, where the damages awarded by the street board were less than $100,000, believe in good faith that they would not reach that sum, even upon an appeal which was pending, and that there were compelling reasons why the city should proceed with the improvement; and it might do this, spending large sums of money and greatly damaging the property owners affected, only to find that upon the appeal the damages were so increased that the total cost to the city would be over $100,000, and the whole proceedings were invalid. Again, the street board might err in estimating the cost of the construction, and for reasons entirely beyond anything it had anticipated, that cost might bring the

total expenditure made by the city for the improvement above $100,000. So it might be that the assessment of benefits which could be offset against the damages might be so reduced upon an appeal as to make the cost to the city greater than that sum. If the test for the application of the charter provision in question be the actual cost to the city as it finally eventuates, a standard for the application of the charter provision would be fixed which it would be difficult, if not impracticable, to apply in many cases. Moreover, to interpret this provision as applicable to such cases would be greatly to limit the power of a city to proceed with an improvement while an appeal was pending, because the common council could not, except in the clearest case, reasonably direct that this be done until all appeals taken had been finally decided. On the other hand, under the charter the street board is required to report the cost of the public improvement, including the damages to be paid as it appraises them and the amount of benefits it assesses, and when upon its report the matter comes before the common council, it has before it a definite basis for determining the cost to the city as it has been estimated by the board of street commissioners.

The provision of the charter in question is that no vote by the common council or any branch of the city government "which shall require" an expenditure of more than $100,000 shall be valid unless approved at a city meeting. The quoted words themselves indicate that the matter is to be determined upon the basis of an anticipated cost, not of the cost to which the city is ultimately put. It is to be assumed that the Legislature had in mind the other provisions of the city charter in enacting this law. The reasonable meaning to be attributed to the words "which shall require" is that the test is the cost to the city as it has been esti-

mated by the board of street commissioners rather than the ultimate cost to which the city may be put by reason of facts which neither the board nor the common council could anticipate. Our conclusion is, therefore, that the provisions requiring a submission of the proposed public improvement to a city meeting does not apply in this case.

On the appeal before us, the city has argued that the plaintiff was not entitled to recover in this action because his land had not as yet been so taken as to entitle him to compensation. This question was not raised in the trial court, nor is it included in the assignments of error. We are, therefore, under no obligation to consider it. Practice Book, § 363; *Boardman* v. *Burlingame*, 123 Conn. 646, 654, 197 Atl. 761. In view, however, of the large sum involved and the interest of the municipality in the matter, we have considered whether we should regard it. It is difficult to see how the question could arise under the allegations of the complaint without a special answer. The judgment of the Court of Common Pleas upon the appeal fixed the damages as of "the date of the taking," being the day when the common council voted that the new lines be laid out, and we would be confronted with the question whether the issue as to the time of taking had not become res adjudicata by reason of that judgment. It appears in the finding that the city has paid the amount awarded to one of the three owners of the property involved in the improvement, $11,000. As far as the record shows, it has taken no steps to rescind its vote establishing new street, building and veranda lines across the plaintiff's property. Under the circumstances the question sought to be presented partakes too much of the aspect of an afterthought of counsel, designed to secure a postponement of the time when damages must be paid rather than that of a real de-

fense against the ultimate liability of the city, to justify us in departing from our usual rule not to consider issues which were not raised in the trial court.

There is no error.

In this opinion the other judges concurred.