The plaintiff, Richard Bentley, with his wife and children attended a picnic on defendant's property on July 14, 1963. The plaintiff is a member of the defendant, Hamden Post 88, Inc., and had purchased tickets to attend this affair. As a member of the clean-up committee on the day of the picnic, at about 5 p.m. the plaintiff, while carrying a box of trash to the incinerator, stepped on a nail that was protruding from a wooden board in defendant's parking lot. The plaintiff is seeking damages for his injuries.
The court finds that the price paid by the plaintiff for the tickets to this picnic was a charge or fee rather than a donation. He was an invitee at this picnic. The price for each ticket had been established by the defendant to pay for all the food, with a small profit left over for the defendant.
The steward of Post 88 testified that he takes care of the sidewalk, lawn, shrubbery, etc. He is *Page 58 
an officer of this Post and is in charge of the bar and the maintenance of the building. He testified that he was aware over a period of more than three years that there were two four-by-four wooden rails placed on the parking area at right angles to keep the cars within a specific area. These rails were affixed with 20-penny nails to wooden posts that were buried in the ground. He also knew that this type of fastening was not good because cars would hit the rail at the edge of the parking area and the rail would turn over, exposing the nails. It then became necessary to turn the rail and nail it back to the posts. He testified that this was almost a daily occurrence. He was familiar with this rail, and it was old and bleached by the sun.
On the day of the picnic, no cars were permitted to park in the parking area. Chairs and tables were carried out that morning and set up in this parking area. The incinerator or trash can was located beyond this area, and it was necessary to walk over this rail to reach it. At about 5 p.m. in the afternoon, the plaintiff was carrying a box filled with leftovers to the trash cans. In walking through this parking area, he stepped on the wooden rail, which had been partially covered with corn husks and picnic debris, and a nail went through his sneaker and into his right foot.
The court believes that defendant had knowledge of the dangerous and defective condition of these rails, which required attention on almost a daily basis. On the day of the picnic, no inspection was made of this railing to see that it was affixed properly. It could only be turned over by an automobile pulling it or knocking it off the imbedded posts, and since no automobiles had been allowed to park there that day, it can be concluded that this rail was turned over with the nails exposed at least from the very morning of the picnic. *Page 59 
The defendant is under a duty to use reasonable care to keep its premises in a reasonably safe condition for such use as the defendant knew was being made of them. The defendant did not use reasonable care to make its premises reasonably safe for its intended users, of which the plaintiff was one. The defective and dangerous condition of this rail was one that should have been discovered by the defendant in the exercise of reasonable supervision that day. The defendant is not relieved of liability by claiming it did not have actual knowledge that day as to whether the rail was turned over or not. The court finds that the defendant had constructive notice of this upturned rail. White v. E F ConstructionCo., 151 Conn. 110, 113.
Even though the plaintiff was carrying a box of trash in front of him as he walked toward the trash can, he was acting as a reasonably prudent person under the circumstances and was not guilty of any contributory negligence. Since the rail was also partially covered with picnic debris, this may account for the fact that plaintiff failed to see the rail with the nail exposed.
The defendant by special defense would like to rely on the doctrine of charitable immunity by claiming that since the plaintiff was a member of Hamden Post 88 and in receipt of the benefits of its charity, he cannot prevail. Defendant is a nonstock corporation and enjoys a tax exempt status. All nonstock corporations are, however, not entitled to the protection of charitable immunity. Section 33-428 (b) of the General Statutes permits such corporations to be sued. Also, the fact that a nonstock corporation enjoys tax exemption — that fact alone — does not determine its charitable nature. The defendant presented very little evidence to prove the charitable nature of its operation. There was testimony that it conducts social affairs for its *Page 60 
members and guests and that it spends the money collected at these affairs for food, and any profit is used to maintain the building and to donate flags to the Boy Scouts. The court does not believe that the defendant is a charitable corporation conducting itself in such a manner that it is entitled to the benefit of the doctrine of charitable immunity. Reasonable men would not, by the evidence presented, conclude that defendant is a charitable corporation.Boardman v. Burlingame, 123 Conn. 646.
The plaintiff sustained a puncture wound in his right foot. His medical bills amounted to $361.26. He is a self-employed contractor and was unable to work for a period of approximately six weeks. This accident happened in the summertime, and he was disabled during his busy season. He suffered a net financial loss in his business of approximately $2400. The plaintiff is entitled to damages to be collected from the defendant.
 Judgment may enter in favor of the plaintiff, Richard Bentley, to recover of the defendant, Hamden Post 88, Inc., the sum of six thousand five hundred dollars ($6500).