JOSEPH KAVANEWSKY *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF WARREN

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued November 6, 1970—decided February 10, 1971

*Melvin J. Silverman,* with whom, on the brief, was *George J. Lepofsky,* for the appellant (plaintiff).

*Walter M. Pickett, Jr.,* for the appellee (defendant).

SHAPIRO, J. The following facts are pertinent to this appeal. In 1934, the town of Warren adopted zoning pursuant to the provisions of chapter 29 of the Revision of 1930, now chapter 124 of the General Statutes. In 1959, by ordinance, the town was divided into two zones, one north and the other

south. The north zone was made subject to certain uses, including a requirement that a building lot contain not less than one acre and have a width of not less than 100 feet. Still another provision required that "no business conducted for a profit shall be operated on any premises except by a resident of the Town of Warren." Warren Zoning Regs. § 3 (1) (1959). The south zone was limited to certain uses and under § 2 (10) of the zoning regulations contained the same one-acre minimum lot size provision as in the north zone.

On October 30, 1964, Joseph Kavanewsky, hereinafter referred to as the plaintiff, entered into a contract to purchase certain properties, which included land located at Arrow Point, in the south zone of the town. Prior to October 30, 1964, and until January 29, 1965, § 2 (10) of the zoning regulations as to the south zone provided that: "No dwelling shall be erected on any lot having an area less than one acre, minimum width of lot is to be 100 feet, unless topographical or other conditions render these measurements unreasonable." At a public hearing held on January 12, 1965, a map for a subdivision of land on Arrow Point, "plans show 49 lots of 1 acre with 100' road frontage", was submitted by the plaintiff to the Warren zoning and planning commission, hereinafter referred to as the commission. Prior to this submission, the plaintiff had expended $5367 for engineering expense related to the preparation of maps. The minutes of this hearing disclose that the map was neither acted on nor accepted but do state that "[I]t was agreed that no proposal by Mr. Kavanewsky for less acreage per building lot would be acceptable by the commission." The minutes also stated that a request had been made to the soil conservation office for a

report as to the kind of soil and subsoil in relation to the sewage systems at Arrow Point and that the town health officer would call in state officials on this matter. The minutes also disclose that a motion was made and seconded to call a hearing as soon as possible to increase the size and frontage of building lots. It was voted to call a public hearing on January 25, 1965, at 8 p.m. "to propose for adoption an increase in acreage of building lots and to increase the frontage of building lots." Notices for the call of this meeting were published in the New Milford Times on January 14 and 21, in language similar to that of the proposal just recited. After the public hearing on January 25, 1965, § 2 (10) was amended by unanimous vote of the commission whereby no dwelling could be erected on a lot having an area of less than two acres and having less than a 200-foot frontage, unless topographical or other conditions rendered such measurements unreasonable. It was further voted that these changes were to become effective on January 29, 1965, with notice to be advertised in the New Milford Times and the amendment to be filed in the town clerk's office. A notice was published on January 28, 1965, and the amendment was filed with the town clerk on January 27, 1965.

On January 30, 1965, the deed conveying the properties which were subject to the contract of October 30, 1964, was delivered to the plaintiff, and on February 3, 1965, the deed was recorded in the Warren land records. On October 27, 1965, the plaintiff filed three applications for building permits with the commission for three lots shown as numbers 21, 22 and 23 on his submitted plans. These applications requested permission to build on lots containing less than two acres and having less than a 200-

foot frontage. The commission considered and denied the applications at a meeting on November 9, 1965, for the reason that none of these complied with § 2 (10) of the zoning regulations which prohibited the erection of a dwelling on a lot having an area of less than two acres and required a minimum frontage of 200 feet. The plaintiff appealed to the zoning board of appeals, hereinafter called the defendant, which held a hearing on January 11, 1966, and on March 3, 1966, upheld the commission's decision denying the plaintiff's building permit applications. An appeal was taken from the board's action to the Court of Common Pleas where the issues were found for the defendant and the plaintiff's appeal was dismissed. From the judgment rendered, an appeal was taken to this court.

The plaintiff claims that the action of the commission, and the sustaining of it by the defendant, in increasing the minimum lot size to two acres was arbitrary, illegal and in abuse of the discretion vested in it. This claim is predicated on the plaintiff's contention that the change in upgrading was made "without any change in conditions and without any reasons for said change other than the vote of persons attending the public hearing." No such claim was made in the court below or in the plaintiff's claims of law as required by Practice Book § 619. He does assign error, however, in the conclusions reached by the court, (1) that the zoning regulations in effect when the plaintiff acquired title and at the time the applications were filed and acted on required a minimum of two acres and a 200-foot frontage on a town road, and (2) that the defendant did not act arbitrarily, illegally and in abuse of its discretion but acted correctly on the applications as it was required to do in accordance with § 2 (10) of

the commission's regulations. Nevertheless, while this issue was so presented on this appeal by the plaintiff, both sides, in their briefs and in argument, discussed fully the issue whether the commission acted illegally, arbitrarily and in abuse of its discretion. We have held that, although an assignment was defective, important rulings might be considered where counsel make them definite in their briefs. *Boardman* v. *Burlingame,* 123 Conn. 646, 655, 197 A. 761; *State* v. *Burns,* 82 Conn. 213, 219, 72 A. 1083; see also *Wicks* v. *Knorr,* 113 Conn. 449, 456, 155 A. 816; *Monroe National Bank* v. *Catlin,* 82 Conn. 227, 229, 73 A. 3. While we are not bound to consider a matter which is not contained in an assignment of error relating to overruling claims of law unless it is properly raised as required by Practice Book § 652, we have on occasion considered a question not so raised, not by reason of the appellant's right to have it determined but because, in our opinion, in the interest of the public welfare or of justice between the parties it ought to be done. See *Leary* v. *Citizens & Manufacturers National Bank,* 128 Conn. 475, 479, 23 A.2d 863; *Boardman* v. *Burlingame,* supra; *Rindge* v. *Holbrook,* 111 Conn. 72, 75, 149 A. 231. Accordingly, we have followed this course where the error went to a vital issue in the case. See *G. & H. Investment Co.* v. *Raymond,* 113 Conn. 778, 779, 155 A. 497; *Wicks* v. *Knorr,* supra; Maltbie, Conn. App. Proc. § 167, p. 207. Because, in our view, the public welfare is here involved and the action taken by the commission and the sustaining of it by the defendant will result in manifest injustice if the judgment of the court is sustained, we consider the claims made in the plaintiff's attack on the court's conclusions.

The commission, acting in its legislative capacity

in amending its regulations, is not necessarily bound by the rule which prohibits administrative boards from reversing earlier decisions without a change of circumstances. *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 209, 230 A.2d 606; *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 243, 196 A.2d 427; *Corsino* v. *Grover,* 148 Conn. 299, 310, 170 A.2d 267. General Statutes § 8-2 sets forth what the commission must consider in enacting zoning regulations.[1] The essential question, in any case, is whether any one of several reasons which may be given for the change is reasonably supported. *Young* v. *Town Planning & Zoning Commission,* supra, 245. The commission gave its reason for upgrading the lot area requirements from one to two acres. If that reason supports the action of the commission the plaintiff must fail in his appeal. *Senior* v. *Zoning Commission,* 146 Conn. 531, 534, 153 A.2d 415, appeal dismissed, 363 U.S. 143, 80 S. Ct. 1083, 4 L. Ed. 2d 1145. We examine the reason assigned by the commission in the light of the requirements of § 8-2. See *Young* v. *Town Planning & Zoning Commission,* supra.

The minutes of the hearing of January 25, 1965, disclose that various members of the commission

---

[1] Section 8-2 provides that regulations of a zoning commission as to the use of land "shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

were present and that "[i]t was a large attendance with at least 35 people expressing their feelings. . . . The desire of the majority was for 2 acres of land for a dwelling lot and 200′ lot frontage. The commission met after the hearing and voted to adopt 2 acres of land for a dwelling lot with a minimum frontage of 200′. . . . The changes in regulations were made in demand of the people to keep Warren a rural community with open spaces and keep undesirable businesses out." In 1965, the estimated population of the town was 680 and its area consisted of 27.9 square miles.[2] Nevertheless, municipalities, small or large, having adopted zoning under what is now chapter 124 of the General Statutes, must be equally governed by the legislative mandate.

Pursuant to the requirement of General Statutes § 8-3 the commission stated upon its record as its reason for upgrading the lot area requirements from one to two acres as being "made in demand of the people to keep Warren a rural community with open spaces and keep undesirable businesses out." We agree, as the plaintiff argues in his brief, that the reason given by the commission is not in accordance with the requirements of § 8-2 as recited in footnote 1.

A zoning authority is endowed with a wide and liberal discretion. *Bartram* v. *Zoning Commission,* 136 Conn. 89, 96, 68 A.2d 308. When the commission, however, has not acted fairly, with proper motives and upon valid reasons, this discretion is to be overruled. *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A.2d 668. The most generous reading of the commission's reason for the upgrading of the zone area fails to show any compliance with

[2] Connecticut Register and Manual, p. 520 (1965).

even a single requirement of the legislative direction contained in § 8-2. The action of the commission, accordingly, was arbitrary and illegal and cannot be sustained. The plaintiff has shown that the action of the commission in upgrading the south zone could not be supported by the reason given.

There is error, the judgment is set aside and the case is remanded with direction to render judgment directing the defendant to reverse its earlier decision in which it sustained the commission's action denying the three applications for building permits.

In this opinion the other judges concurred.