[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The facts as alleged in the third revised complaint are as follows: The plaintiff, Edward Lougee ("Lougee"), was an employee, director and officer of the defendant, Standard-Knapp, Inc. f/k/a Emhart Corporation ("SKI"). On April 8, 1991, the defendant, Arthur Tanner ("Tanner"), an employee, director and officer of SKI, terminated Lougee as an employee, director and officer of SKI without prior notice or warning. Subsequently, the defendants, SKI, A. John Lorenze ("Lorenze"), Barton Bauers, Jr. ("Bauers"), and John Raudat ("Raudat"), ratified Lougee's termination without cause.
On August 5, 1992, the plaintiff commenced the present action by Application for Prejudgment Remedy against the defendants, SKI and its employees, directors and officers, Lorenze, Bauers and Raudat (hereinafter the "directors"). This application was granted by the court, Leuba, J., on September 9, 1992, in the amount of $350,000, against SKI only. On September 9, 1992, the plaintiff caused to be served a copy of the Application for Prejudgment Remedy, writ, summons and complaint on defendant SKI but not the other defendants. As a result of the plaintiff's failure to serve the directors, on October 8, 1992, the plaintiff filed a motion to cite in the directors as additional defendants, which was granted by the court, Hurley, J., on October 26, 1992.
Thereafter, the plaintiff filed a third revised forty-count complaint against the defendants, SKI and the directors. The third revised complaint alleges eight separate theories of recovery directed at each defendant individually. The plaintiff alleges claims for: breach of contract, counts one through five; breach of the implied covenant of good faith and fair dealing, counts six through ten; breach of fiduciary duty, counts eleven through fifteen; promissory estoppel, CT Page 11048 counts sixteen through twenty; negligent misrepresentation, counts twenty-one through twenty-five; defamation, counts twenty-six through thirty; intentional infliction of emotional distress, counts thirty-one through thirty-five; and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), counts thirty-six through forty.
On May 14, 1993, the defendants filed a motion to strike counts sixteen through twenty and counts thirty-one through forty, along with a memorandum of law in support thereof. On July 13, 1993, the plaintiff filed an objection to the defendants' motion to strike along with a memorandum of law in support thereof, and on November 8, 1993, the defendants filed a reply memorandum in support of their motion to strike.
DISCUSSION
"A motion to strike challenges the legal sufficiency of a pleading. Practice Book 152." Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original.) Id., 108. "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint . . . and `cannot be aided by the assumption of any facts not therein alleged.'" (Citations omitted.) Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990).
The court must construe the pleading "in the manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471, 594 A.2d 1 (1991), citing Michaud v. Wawruck, 209 Conn. 407, 408, 551 A.2d 738 (1988). Where the facts provable under the allegations of the pleading would not support a cause of action, the motion to strike must be granted. Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989).
Counts 16-20 — Promissory Estoppel
The defendants move to strike counts sixteen through twenty on the ground that allegations based upon the equitable doctrine of estoppel are not sufficient to state a cause of action. Rather, the defendants assert that the equitable doctrine of estoppel is merely a special defense. CT Page 11049
In opposition, the plaintiff argues that counts sixteen through twenty are not claims based upon the equitable doctrine of estoppel but allege claims under the theory of promissory estoppel. In reply, the defendants assert that even if the plaintiff has attempted to plead promissory estoppel claims in counts sixteen through twenty, the plaintiff has failed to sufficiently allege such claims.
The doctrine of promissory estoppel provides that "`[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987), quoting Restatement (Second) Contracts, 90; see also Finley v. Aetna Life Casualty, 202 Conn. 190, 205, 520 A.2d 208 (1987). "A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which the promisor could reasonably have expected to induce reliance." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 213. In addition, in order to establish a cause of action for promissory estoppel, the plaintiff must allege that he acted to his detriment and that he was induced to do so by actions of the defendants. Id.
In counts sixteen through twenty, the plaintiff alleges that: the defendants made promises and representations to the plaintiff that he could only be terminated for just cause and only after progressive discipline and counseling; such representations and promises, along with the defendants' customs, practices and policies, gave rise to the plaintiff's expectation that his employment could only be terminated for just cause; such representations and promises were made with the purpose and intent to induce the plaintiff to invest in and accept employment with the defendant, SKI; the defendant knew or should have known that the plaintiff would rely on said promises and representations, and; the plaintiff did in fact rely on said promises and representations by investing monies in SKI, accepting employment with SKI, and placing a second mortgage on his residence. These allegations are sufficient to allege a claim for promissory estoppel.
The defendants further argue that the plaintiff has CT Page 11050 pleaded a claim for breach of contract in the same counts as his promissory estoppel claims. The defendants argue that by mixing two theories of liability in the same count the plaintiff has failed to comply with Practice Book 138 which requires that separate and distinct causes of action be pleaded in separate counts. Therefore, the defendants argue that by pleading both that he had a contract and that he did not, the plaintiff has failed to sufficiently allege a claim for promissory estoppel.
"`If a count in a complaint purports to set out more than one cause of action, a [motion to strike] addressed to the entire count fails if it does not reach all of the causes of action pleaded.'" Johnson v. Killingworth,8 Conn. L. Rptr. 227, 228 (January 19, 1993, Walsh, J.), quoting Watchel v. Rosol, 159 Conn. 496, 499, 271 A.2d 84 (1970). As noted above, the court finds that the plaintiff has sufficiently pleaded a claim for promissory estoppel in counts sixteen through twenty.
Furthermore, to the extent the defendants seek to have the promissory estoppel claim and breach of contract action separated into two counts, Practice Book 147 provides that "[w]henever any party desires to obtain . . . separation of causes of action which may be united in one complaint when they are improperly combined in one count . . . the party desiring any such amendment in an adverse party's pleading may file a timely request to revise that pleading." Practice Book 147(3). The court finds that a request to revise and not a motion to strike is the proper vehicle to separate the plaintiff's breach of contract and promissory estoppel claims. Accordingly, the defendants' motion to strike counts sixteen through twenty is denied.
Counts 31-35 — Intentional Infliction of Emotional Distress
The defendants move to strike counts thirty-one through thirty-five on the ground that the plaintiff has not sufficiently alleged a claim for intentional infliction of emotional distress.
 "`In order for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor CT Page 11051 intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Hiers v. Cohen, 31 Conn. Sup. 305, 329 A.2d 609
(1973); 1 Restatement (Second) Torts 46.'"
Delaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807
(1991), quoting Petyan v. Ellis, 200 Conn. 243, 253,510 A.2d 1337 (1986).
The defendants argue that the plaintiff has failed to allege sufficient facts to show extreme or outrageous conduct. "`It is for the court to determine in the first instance, whether the defendant's conduct may reasonably be granted as so extreme and outrageous as to permit recovery. . . . Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 19 n. 1,597 A.2d 846 (1991, Berdon, J.), quoting 1 Restatement (Second) Torts, 46, comment (h). In order to constitute extreme and outrageous conduct,
 [i]t is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Restatement (Second) Torts, 46, comment (d).
The plaintiff alleges that the defendants expressly or impliedly promised and represented to the plaintiff that he CT Page 11052 could be terminated only for just cause and only after progressive discipline and counseling. The plaintiff further alleges that the defendants terminated the plaintiff without cause on the ground that he lacked the necessary education and experience required to continue the manufacturing operation of SKI. Thus, the plaintiff's allegations merely pertain to statements made concerning his ability to adequately perform his job. Such allegations are not sufficient to satisfy the second element of intentional infliction of emotional distress which requires a showing that the defendants' conduct was extreme and outrageous. See Petyan v. Ellis, supra, 245 (Holding that allegations that the plaintiff was released from his employment "for reasons of unsatisfactory performance and mainly for fraud and lying" are insufficient to show "extreme and outrageous" conduct.); McGrath v. Yale Corporation, Superior Court, Judicial District of New Haven at New Haven, Docket No. 326144 (May 17, 1993, Thompson, J.). (Holding that allegations concerning the plaintiff's "job performance and ability or inability to successfully interact with others in an employment setting" are not sufficient to show "extreme and outrageous" conduct). Accordingly, the defendants' motion to strike counts thirty-one through thirty-five is granted
Counts 36-40 — CUTPA
The defendants move to strike counts thirty-six through forty on the ground that CUTPA does not apply to the employee/employer relations. General Statutes 42-110b
provides, in pertinent part, that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes 42-110b(a). "The policy behind CUTPA is to encourage litigants to act as private attorneys general and to bring actions for unfair or deceptive trade practices." Hernandez v. Monterey Village Associates Limited Partnership,17 Conn. App. 421, 425, 553 A.2d 617 (1989). CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. Web Press Services Corp. v. New London Motors, Inc., 203 Conn. 342, 354,525 A.2d 57 (1987).
CUTPA does not apply to disputes arising under the employee/employer relationship since "the employee/employer relationship does not fall within the definition of trade or commerce for purposes of an action under CUTPA." Quimby v. CT Page 11053 Kimberly Clark Corporation, 28 Conn. App. 660, 670,613 A.2d 838 (1992), citing Banerjee v. Roberts, 641 F. Sup. 1093
(D. Conn. 1986). The court finds that any claims for violations of CUTPA based upon the employment relationship are legally insufficient.
In opposition to the defendants' motion to strike, the plaintiff asserts that even if CUTPA does not apply to employee/employer relationships counts thirty-six through forty allege facts which do not relate to the employment relationship. Specifically, the plaintiff asserts that he has alleged a partnership relationship in addition to an employee/employer relationship. In reply, the defendants argue that even assuming the plaintiff has alleged a partnership relationship, the plaintiff's claims fall outside the scope of CUTPA. The court agrees.
"CUTPA's `trade or commerce' definition does not apply to . . . "the internal business affairs and workings of [a] partnership." Chester v. Schatz Schatz, Ribicoff Kotkin,6 Conn. L. Rptr. 525, 527 (June 3, 1992, O'Neill), quoting Heller v. North American Rock Co., 6 CSCR 272 (February 6, 1991, Lewis, J.); see also Carta v. Liva,9 Conn. L. Rptr. 439, 441 (July 26, 1993, Higgins, J.) ("CUTPA is inapplicable to the internal business affairs and dealings of a partnership."). The "`internal strife of a partnership' . . . does not arise in trade or commerce and does not cause substantial demonstrable injury to consumers, competitors or other businessmen." (Citation omitted.) Chester v. Schatz Schatz, Ribicoff Kotkin, supra, 527. All of the plaintiff's allegations relate to the internal dealings of the partnership. The plaintiff has failed to allege sufficient facts to support a claim under CUTPA. Accordingly, the defendants' motion to strike counts thirty-six through forty is granted.
CONCLUSION
In conclusion, the court finds that the plaintiff has sufficiently pleaded a claim for promissory estoppel. The defendants' motion to strike counts sixteen through twenty is denied.
The court finds that the plaintiff's allegations regarding statements made concerning his ability to perform CT Page 11054 his job are not sufficient to satisfy the second element of intentional infliction of emotional distress which requires a showing that the defendants' conduct was extreme and outrageous. The defendants' motion to strike counts thirty-one through thirty-five is therefore granted.
Finally, since CUTPA does not apply to either the employee/employer relationship or the internal dealings of a partnership, the plaintiffs allegations based upon both the employee/employer relationship and the internal dealings of the partnership are legally insufficient. Accordingly, the defendants' motion to strike counts thirty-six through forty is granted.
Hurley, J.